JAMES GILET & others *vs.* CITY CLERK OF LOWELL & others.

Middlesex.   May 14, 15, 1940. — May 29, 1940.

Present: FIELD, C.J., DONAHUE, DOLAN, COX, & RONAN, JJ.

*Municipal Corporations,* Referendum, Municipal finance.

A protest, set forth in a petition purporting to be presented under G. L. (Ter. Ed.) c. 43, § 42, as amended by St. 1935, c. 68, § 2, against an appropriation order of the city council of a city acting under a Plan B form of charter "taking effect in excess of" a named total sum, without specific reference to any item, was a nullity.

PETITION, filed in the Superior Court on April 3, 1940.

The case was heard and reported by *Hanify,* J.

*F. M. Qua,* (*W. J. White, Jr.,* with him,) for the petitioners.

*H. L. McLaughlin,* City Solicitor, (*J. J. Bruin* with him,) for the respondents.

COX, J.   This is a petition of three registered voters of the city of Lowell for a writ of mandamus commanding the respondent city clerk of Lowell to transmit to the board of

election commissioners of that city, the members of which are named as respondents, a petition alleged to be in accordance with the provisions of G. L. (Ter. Ed.) c. 43, § 42, "as amended" (see St. 1935, c. 68, § 2), and also commanding said board to examine said petition and to ascertain by what number of registered voters it is signed and what percentage that number is of the total number of registered voters in said city, and to attach thereto their certificate of their findings. A judge of the Superior Court, who heard the petition upon the pleadings and a statement of agreed facts, denied the writ as a matter of law, and not as a matter of discretion, and reported the case upon the pleadings and statement of agreed facts for the determination of this court. (G. L. [Ter. Ed.] c. 213, §§ 1A, 1B, as inserted by St. 1939, c. 257, § 1.) The charter of the city of Lowell is that provided for in G. L. (Ter. Ed.) c. 43, known as Plan B, subject, however, to such provisions of St. 1921, c. 383, as are not inconsistent with said c. 43.

On February 6, 1940, the mayor submitted to the city council a budget, in accordance with law, containing itemized recommendations for appropriations to be expended by the various departments and officers of the city for the year 1940. On March 19, 1940, the city council passed an appropriation order amounting to $5,338,893.46. This order followed the recommendations of the mayor except as to eight items that were either reduced or eliminated. On April 1, 1940, the petitioners filed with the city clerk a petition containing the signatures and addresses of eight thousand seventy persons purported to be registered voters. The number of registered voters in Lowell did not exceed fifty thousand. This petition, after reciting that the city council on March 19, 1940, by final action passed an order appropriating the sum of $5,375,451.46 for the purpose of meeting fixed charges and current expenses of the city for the fiscal year 1940, alleges: "We . . . hereby protest in accordance with General Laws, (Ter. Ed.) Chapter 43, Sec. 42, as amended, against said appropriation order taking effect in excess of $4,953,370.87." On April 1, 1940, the petitioners requested the city clerk to transmit said petition

to the board of election commissioners so that they might comply with the provisions of § 38 of said c. 43 as to the certification of the names of the signers of the petition. The city clerk refused to transmit the petition. On April 2, 1940, the board of election commissioners received a letter from the petitioners in which attention was called to the fact of the filing of the "Referendum Petition" and to the provisions of §§ 38 and 42, as amended, of said c. 43, together with a demand that the board proceed in accordance with said sections. The board has never actually received said petition nor acted in any manner upon it. On April 2, 1940, at a meeting of the city council, the city clerk, who is also clerk of the city council, brought said petition before the council for action, without any certificate of the board of election commissioners being attached thereto, and the city council voted to lay the petition upon the table.

It is unnecessary to consider many of the contentions that have been argued, for if it be assumed, without deciding, that a referendum petition relative to a municipal appropriation order is available, we are of opinion that the petition in question does not meet the requirements of § 42 of said c. 43.

Said § 42, as amended by St. 1935, c. 68, § 2, provides, so far as material, that if within twenty days after the final passage of any measure, except a revenue loan order, by a city council, a petition signed by a specified number of registered voters of the city is presented to the council protesting against "such measure, or any part thereof" taking effect, the same shall thereupon and thereby be suspended from taking effect, and the city council shall immediately reconsider "such measure or part thereof," and if "such measure or part thereof is not entirely rescinded, the city council shall submit the same . . . to a vote of the registered voters of the city."

Section 37 of said c. 43 provides, in part, that "In this and the eight following sections [including said § 42], 'measure' shall mean an ordinance, resolution, order or vote passed by a city council . . . ." Upon the basis of our assumption, as hereinbefore stated, the question is presented

Mass.]   GILET v. CITY CLERK OF LOWELL.   173

whether the petition in the case at bar can be said to be a protest against "any part" of a "measure." The petitioners state in their brief that their petition "causes no confusion as to the portion thereof [of the order as a whole] which is actually protested against." We are of opinion that it was not the intention of the Legislature that a protest such as in the case at bar should be entertained, and that the protest, therefore, was a nullity. See *Opinion of the Justices,* 294 Mass. 616, 620–621.

G. L. (Ter. Ed.) c. 44, commonly referred to as the municipal finance act, in §§ 32 to 34 inclusive, as amended by St. 1938, c. 175, § 1; c. 378, § 16, and as appearing in St. 1938, c. 170, contains carefully drawn provisions relating to budgets in cities. The importance of these provisions, the purpose for which they were adopted, and the limitations imposed by them have been the subject of several decisions of this court. See *Flood* v. *Hodges,* 231 Mass. 252; *Shannon* v. *Mayor of Cambridge,* 231 Mass. 322; *Leonard* v. *School Committee of Springfield,* 241 Mass. 325; *Averell* v. *Newburyport,* 241 Mass. 333; *Daly* v. *Mayor of Medford,* 241 Mass. 336; *Decatur* v. *Auditor of Peabody,* 251 Mass. 82; *Parkhurst* v. *Revere,* 263 Mass. 364; *Burt* v. *Municipal Council of Taunton,* 275 Mass. 535; *Whalen* v. *City Forester of Waltham,* 279 Mass. 287; *Remington Typewriter Co.* v. *Revere,* 285 Mass. 1; *McHenry* v. *Lawrence,* 295 Mass. 119; *Barnard* v. *Lynn,* 295 Mass. 144; *Continental Construction Co.* v. *Lawrence,* 297 Mass. 513; *Feltham* v. *Springfield,* 300 Mass. 193; *Fortin* v. *Chicopee,* 301 Mass. 447; *McCarthy* v. *Malden,* 303 Mass. 563.

It is provided by § 32 of said c. 44, as amended by St. 1938, c. 175, § 1, that the mayor of such cities as Lowell, within sixty days after the annual organization of the city government, shall submit to the city council the annual budget of the current expenses of the city. "The budget shall consist of an itemized and detailed statement of the money required, and the city council, by a majority vote, shall make such appropriations in detail, clearly specifying the amount to be expended for each particular purpose; but the budget shall not be in such detail as to fix specific

salaries of employees under the direction of boards elected by
the people, other than the city council. The city council
may reduce or reject any item, but, without the approval of
the mayor . . . shall not increase any item in or the total
of a budget, nor add any item thereto." If the city coun-
cil fails to approve or disapprove any item in the budget,
as submitted by the mayor as aforesaid, such item shall,
without any council action, become a part of the budget
for the year, and the sum named shall be available for the
purpose designated. The mayor may require the city officials
to submit to him, in such detail as he may specify, estimates
for the next fiscal year of the expenditures of their depart-
ments or offices under their charge, which shall be trans-
mitted to the city council. If the mayor fails to submit
the annual budget, the city council shall forthwith, upon
its own initiative, prepare it, and, in such case, the city
council shall have the same authority to require estimates
of the expenditures of the several departments and offices
of the city as is thereinbefore given to the mayor. Section
33 of said c. 44 contains provisions for appropriations in
case of the failure of the mayor to transmit to the city coun-
cil a written recommendation for the same for any purpose
deemed necessary by the city council after having been so
requested by vote thereof. In all such cases it is required
that the council shall make the appropriations "in detail,
clearly specifying the amount to be expended for each par-
ticular purpose," but not in such detail as to fix specific
salaries of employees under the direction of boards elected
by the people, other than the city council.

The mandatory provisions of the statute relative to the
itemized and detailed statement of the money required and
that the appropriations shall be made in detail except as to
certain specific salaries, the requirement that the budget
shall clearly specify the amount to be expended for each
particular purpose, the power of the city council to reduce
or reject items, the provision that they shall not, without
the approval of the mayor, increase any item in or the total
of a budget, nor add any item thereto, and the power of the
city council to make appropriations in detail in case of the

failure of the mayor to transmit written recommendations, all are factors that emphasize in no mistakable manner the paramount importance that the Legislature attributed to the itemizing of the budget. The petitioners, by their protest, which, if allowed and not acted upon adversely by the voters, would merely reduce the total amount of money appropriated without specific reference to any items, are seeking to bring about something that the city council itself could not accomplish directly by any such general and indefinite method. It is true that in said § 32 there is a provision that the city council, without the approval of the mayor, shall not increase any item in, "or the total of a budget," nor add any item thereto. We are of opinion that the words "or the total of a budget," read in connection with the mandatory provisions against increasing any item in, or adding any item to, the budget have no relation to the attempted action on the part of the petitioners in the case at bar to bring about a general and indiscriminate reduction of the budget.

The provisions of § 42 of said c. 43, relative to the right of protest against a "measure, or any part thereof" should be given the full sweep intended by the Legislature, but where, as here, in relation to such a highly important matter as that of the budget in cities, the Legislature has so plainly indicated that — it being still assumed, without deciding, that a budget order is subject to the referendum — a budget order is, by express mandate, made up of specific items, wherein the amount to be expended for each purpose is clearly specified, except as to the provisions relative to specific salaries heretofore referred to, we are of opinion that the words "any part" of such an order refer to specific items therein contained. In ascertaining the intent of the Legislature with respect to the scope and nature of the referendum powers that it has conferred, it is appropriate and important to consider what the consequences of applying it to a particular act of legislation would be, and, if it is found that the exercise of those powers tends to destroy the efficacy of other governmental mandates, the court ought not to place such an interpretation upon the grant of the

referendum powers as to bring about any such result. *Monahan* v. *Funk*, 137 Ore. 580.

It is the contention of the petitioners that the measure in question was a single order and that they have protested against a definite, easily ascertainable part thereof taking effect. As a practical matter, and for the moment apart from other considerations, the question well may be asked as to how the budget appropriation would stand if the petitioners' protest prevailed. If each detailed item should be reduced *pro rata*, it is apprehended that difficulties might arise similar to those present in *Barnard* v. *Lynn*, 295 Mass. 144, and cases that have followed it.

It is true that in *Brown* v. *City Council of Cambridge*, 289 Mass. 333, which was a bill in equity by more than ten taxpayers to restrain the defendants from expending any money or incurring any obligations in connection with a special election, from submitting a question to the voters at a special election, and for other relief, a petition signed by the required number of registered voters protesting against the taking effect of the budget for the school committee for the year 1934 "in excess of $1,847,955.57," the amount expended for the school department in the year 1933, was filed under §§ 38 and 42 of said c. 43. The question of the form of the protest did not arise, however, inasmuch as the bill was ordered dismissed for other reasons. In some respects the protest in the *Brown* case differs from that in the case at bar in that the amount stated is the amount expended in the previous year. We express no opinion, however, as to the sufficiency of the form of the protest in that case. Obviously, it is no authority for the form in the case at bar.

In *Feltham* v. *Springfield*, 300 Mass. 193, the plaintiff, a chief of the fire department, brought an action to recover a portion of his established compensation. The city council reduced three items relating to the fire department that were contained in the budget as submitted to it by the mayor, and "reduced the total of the budget to" a specified sum. It was voted that "the heads of each department be and hereby are directed to absorb the amounts so reduced as to

each and every personal service item reduced" (page 194). Thereafter, the board of fire commissioners, in order to live within its appropriation, reduced salaries of the members of the fire department. The only point decided was that the city council had the power to delegate to the board of fire commissioners its power to fix salaries in the fire department, and that the reduction of salaries was an obvious and reasonable means of complying with the city council's order to "absorb" the reduction. It is not contended, and rightly, that the decision in that case is any authority that the petition in the case at bar will lie.

The writ was properly denied.

*Petition dismissed.*