CITY OF BOSTON & others *vs.* MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY & others.

Suffolk.    October 7, 1977. — December 7, 1977.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Massachusetts Bay Transportation Authority,* Budget, Advisory board.

The Advisory Board of the Massachusetts Bay Transportation Author-
ity had the power to reduce the wage item included in the author-
ity's budget under the provisions of G. L. c. 161A, § 5 (*i*); the au-
thority, however, had the power to determine the manner in which
the reduced wage item was to be allocated. [823-824]

The Massachusetts Bay Transportation Authority was not required by
G. L. c. 161A, § 5 (*i*), to list as a separate item in its budget the
amount estimated for cost-of-living wage increases. [828-829]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on January 3, 1977.

Upon transfer to the Superior Court the case was heard
by *Linscott,* J.

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Peter Koff,* Assistant Corporation Counsel (*Kevin F.
Moloney,* Assistant Corporation Counsel, *Herbert P. Glea-
son,* Corporation Counsel, & *Richard F. Myer,* Assistant
Corporation Counsel, with him) for the city of Boston &
others.

*Joseph H. Elcock,* General Counsel (*Ronald G. Busconi,*
Assistant General Counsel, with him) for Massachusetts
Bay Transportation Authority.

*Harold B. Roitman* for Local 589, Amalgamated Transit
Union, AFL-CIO.

*Warren H. Pyle* for Local 6, Office and Professional Em-
ployees International Union, AFL-CIO, & others.

ABRAMS, J.    The main question presented by this action
is whether the Advisory Board of the Massachusetts Bay

Transportation Authority (Advisory Board) is authorized by G. L. c 161A, § 5 (*i*), to reduce the wage item found in the proposed budget of the Massachusetts Bay Transportation Authority (MBTA) and also to direct that the MBTA not pay cost-of-living wage adjustments contained in its collective bargaining agreements. We hold that under G. L. c. 161A the Advisory Board has the authority to reduce the wage item of the budget, but that it is the MBTA's responsibility to decide the manner in which the funds for wages are to be allocated.[1] Thus we agree with the result reached by the Superior Court but order that the judgment entered be modified to reflect a declaration of the rights of the parties.

The plaintiffs — the city of Boston, twelve other cities and towns within the MBTA territory,[2] and Kevin H. White, as representative of the Advisory Board — brought an action seeking declaratory and injunctive relief enjoining the defendant MBTA[3] from paying certain of its employees during 1977 approximately $6,000,000 in cost-of-living wage increases which the Advisory Board had voted to eliminate from the MBTA's budget of current expenses for 1977. Representatives of all the labor organizations (unions) which have cost-of-living increase provisions in their agreements with the MBTA were either named as defendants or have intervened.[4]

---

[1] The record reflects that in this case the cost-of-living adjustment was implemented by a change in the hourly wage rate.

[2] The town of Arlington, the town of Brookline, the town of Canton, the city of Chelsea, the town of Concord, the city of Everett, the town of Milton, the town of Needham, the town of Randolph, the city of Somerville, the town of Wayland, and the town of Weymouth.

[3] The MBTA's chairman and chief executive officer, Robert R. Kiley, was also named as a defendant.

[4] Local 589, Amalgamated Transit Union, AFL-CIO; Local 651, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers, and Helpers, AFL-CIO; Local 6, Office and Professional Employees International Union, AFL-CIO; Local 104, International Brotherhood of Electrical Workers, AFL-CIO; Local 3, International Brotherhood of Firemen, Oilers, Powerhouse Employees, Operators and Maintenance Men of Boston and Vicinity, AFL-CIO; Local 453, Office

Boston *v.* Massachusetts Bay Transportation Authority.

A single justice denied injunctive relief and transferred the complaint to the Superior Court. Cross motions for summary judgment were filed by the plaintiffs and the defendant MBTA. A judge of the Superior Court, after receiving a recommendation from a special master, granted the MBTA's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and entered judgment for the defendants.[5] The plaintiffs appealed. We granted the plaintiffs' request for direct appellate review.

The facts are as follows. The MBTA is a "body politic and corporate and a political subdivision of the commonwealth." G. L. c. 161A, § 2, inserted by St. 1964, c. 563, § 18. It is authorized by c. 161A to construct, provide, and operate mass transportation services within the cities and towns of the Commonwealth whose territory and inhabitants constitute the MBTA. G. L. c. 161A, § 3. The MBTA's affairs are managed by a board of five directors who are appointed by the Governor. G. L. c. 161A, § 6. The directors of the MBTA are authorized to fix the compensation and conditions of employment of employees, G. L. c. 161A, § 3 (*d*), and to bargain collectively with labor organizations and enter into agreements with such organizations concerning wages, G. L. c. 161A, § 19. General Laws c. 161A, §§ 19 and 19A, authorize arbitration as a means of resolving disputes between the employees and the MBTA.

The Advisory Board to the MBTA consists of representatives of the cities and towns which constitute the

and Professional Employees International Union, AFL-CIO; Boston Lodge 264 of District 38, International Association of Machinists and Aerospace Workers, AFL-CIO; Local 717, International Brotherhood of Electrical Workers, AFL-CIO; and Local 105, International Federation of Professional & Technical Engineers, AFL-CIO.

[5] The special master had recommended that summary judgment be entered for the plaintiffs. The Superior Court judge without further hearing granted the MBTA's motion for summary judgment, denied the plaintiffs' motion for summary judgment, and entered a judgment for the MBTA. The judge thereafter amended the judgment to correct a clerical mistake, see Mass. R. Civ. P. Rule 60(a), 365 Mass. 828 (1974), and then entered judgment for all defendants.

MBTA. G. L. c. 161A, § 7. The Advisory Board has authority to approve or reduce the itemized annual budget of the MBTA. G. L. c. 161A, § 5 (*i*).

Since about 1951, the collective bargaining agreements between the MBTA and the unions have contained provisions for periodic cost-of-living increases in wages during the term of the agreements. According to the record, these increases have been effected by increasing the hourly wage rate. The collective bargaining agreements for the years 1976-1977 provided for a suspension of the cost-of-living increases for the last three quarters of 1976, and a resumption of the usual quarterly adjustments effective January 1, 1977, and quarterly thereafter.[6]

Pursuant to G. L. c. 161A, § 5 (*i*), the MBTA submitted to the Advisory Board a budget of current expenses for 1977. The budget contained the sum of $121,129,474 under the heading of "Wages." This amount included the estimated cost-of-living increases for 1977. The Advisory Board voted to reduce the wage item by $6,153,210, the amount estimated by the Board to be necessary to meet the cost-of-living wage increases. The Advisory Board also voted that the MBTA was to be restricted from transferring any funds into the wage item during 1977.

Notwithstanding the vote of the Advisory Board to reduce the wage item in the 1977 budget by an amount estimated to be necessary to fund the cost-of-living increases, the MBTA has paid the quarterly cost-of-living increases due in January, March, June, and September, as required by the collective bargaining agreements.

---

[6] The 1976-1977 agreement with Local 589, Amalgamated Transit Union, AFL-CIO, which represents approximately 4,000 of the 5,800 MBTA employees covered by collective bargaining agreements, was based on an arbitration award made pursuant to the 1973-1975 agreement. The agreements for the other labor organizations, except Boston Lodge 264 of District 38, International Association of Machinists and Aerospace Workers, AFL-CIO (Local 264), were negotiated and signed following the Local 589 arbitration award and generally follow its provisions. Local 264 rejected an agreement based on the Local 589 award; subsequently the MBTA and Local 264 submitted their dispute to arbitration with the result that an award similar to the Local 589 award was made. Nothing in this case turns on these differences.

The plaintiffs challenge the judgment of the Superior Court on the grounds that (1) the Advisory Board is authorized by G. L. c. 161A, § 5 (*i*), to refuse to fund the cost-of-living wage increases necessary to implement the collective bargaining agreements and (2) the Advisory Board has the power under G. L. c. 161A, § 5 (*i*), to reduce the MBTA's proposed budget by an amount estimated to equal cost-of-living wage increases since the budget submitted by the MBTA should have, but did not, properly include cost-of-living wage increases as a separate item.[7]

"When the meaning of any particular section or clause of a statute is questioned, it is proper, no doubt, to look into the other parts of the statute; otherwise the different sections of the same statute might be so construed as to be repugnant, and the intention of the legislature might be defeated. And if, upon examination, the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Holbrook* v. *Holbrook,* 1 Pick. 248, 250 (1823). We look, therefore, to the entire statute to determine whether the Advisory Board may reduce the budget and also order that the cost-of-living wage increases not be paid.

The Advisory Board's powers herein involved are contained in G. L. c. 161A, § 5 (*i*), as amended through St. 1975, c. 205. In pertinent part, it provides: "All current expenses of the authority shall be in accordance with an itemized budget .... [T]he advisory board shall approve

---

[7] Local 589, but not the other defendants, challenges the right of the municipalities and the Advisory Board to bring this action on the ground that neither of these groups has standing. This argument is without merit. The basic issue clearly involves a dispute over the interpretation of provisions of G. L. c. 161A. A determination of rights, duties and status under a statute is clearly a matter within G. L. c. 231A, §§ 1 and 2. Moreover, since an illegal payment is alleged, the Advisory Board has standing to invoke judicial review. See *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.,* 348 Mass. 538, 549 (1965). We need not decide whether each of the municipalities also has standing.

said budget as submitted [by the MBTA] or subject [it] to such itemized reductions therein as the advisory board shall deem appropriate." Thus the Advisory Board is given broad powers over the budget. *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 543-544 (1965).

Contrasted with G. L. c. 161A, § 5 (*i*), are the powers given the MBTA by G. L. c. 161A, §§ 3 (*d*), 19, and 19A. General Laws c. 161A, § 3 (*d*), as amended through St. 1973, c. 1140, § 3, provides in relevant part, that the MBTA shall have the power "to fix [officers', agents', and employees'] compensation and conditions of employment." General Laws c. 161A, § 19, inserted by St. 1964, c. 563, § 18, provides in pertinent part that "[t]he directors [of the MBTA] shall have authority to bargain collectively with labor organizations representing employees of the authority and to enter into agreements with such organizations relative to wages, salaries, hours, working conditions, health benefits, pensions and retirement allowances of such employees." General Laws c. 161A, §§ 19 and 19A, authorize the MBTA to submit disputes with its employees to arbitration. Thus, the MBTA is given broad power to determine compensation, and, in connection with making this determination, the MBTA is authorized to bargain collectively and to arbitrate disputes. *Massachusetts Bay Transp. Auth.* v. *Labor Relations Comm'n*, 356 Mass. 563, 565 (1970).

These statutory provisions evidence a legislative scheme to afford the Advisory Board general powers over the budget and to give the MBTA authority to make the more detailed determinations concerning labor relations. Interpreting these statutory provisions so that effect is given to the legislative scheme, we conclude that the Advisory Board has the power to reduce the total amount to be paid for wages, but that the MBTA has the authority to determine how such sum will be spent. Cf. *Lynch* v. *Fall River*, 336 Mass. 558 (1958); *Leonard* v. *School Comm. of Springfield*, 241 Mass. 325 (1922).

No showing has been made that the MBTA would ex-

ceed the amount approved for wages if it paid the cost-of-living increases in the present case. The total amount of wages expended is determined primarily by the number of persons employed, the rate of wages paid, and the level of services provided. These factors are within the control of the MBTA under G. L. c. 161A, §§ 3 (*d*), and 3 (*i*). Thus the MBTA, by limiting persons hired or by reducing services, could continue to pay the cost-of-living increases and not exceed the total amount approved for wages.[8]

In reaching our conclusion concerning the respective authority of the MBTA and the Advisory Board, we think it significant that G. L. c. 161A, § 5 (*i*), does not contain any provision requiring further bargaining between the MBTA and its employees if the Advisory Board rejects an item in the budget requiring appropriation by the cities and towns. Cf. G. L. c. 150E, § 7 (*b*), as amended through St. 1976, c. 480, § 21. ("If the appropriate legislative body duly rejects the request for an appropriation necessary to fund the cost items, such cost items shall be returned to the parties for further bargaining.") Nor does it contain any provision for approval of contracts by the Advisory Board. Cf. G. L. c. 43, § 29, as amended through St. 1974, c. 199, § 3. ("[N]o such [i.e. public] contract shall be deemed to have been made or executed until the approval

---

[8] Thus, there is no conflict in this case between the Advisory Board's budgetary powers and the MBTA's power to fix wages. We express no views on any issues which might arise were such a conflict to develop.

In the past, the MBTA has followed this practice of reducing the total amount of expenditures for wages, while continuing to pay cost-of-living increases. For example, in 1972, the MBTA submitted supplementary budgets seeking funds for cost-of-living increases. The Advisory Board refused to approve such funds. Cost-of-living increases, however, continued to be paid. As the wage item became depleted, the MBTA announced that services would be reduced if the supplementary budget requests were not approved. Statute 1972, c. 646, authorized the MBTA board of directors to restore to the 1972 budgets itemized reductions made by the Advisory Board. In 1976, the budget submitted by the MBTA was based on the assumption that no cost-of-living increases were to be paid during the year. An arbitration award required the payment of a cost-of-living increase in March. The MBTA did not ask the Advisory Board to approve a supplementary budget. Rather, it paid the increase and stayed within its budget by reducing services.

of the mayor ... or of the city manager ... and also of the officer or the head of the department or of the chairman of the board, as the case may be, making the contract is affixed thereto.") See also *Urban Transp., Inc.* v. *Mayor of Boston, ante,* 693 (1977).

Our conclusion is further supported by other decisions concerning the MBTA which emphasized the general budgetary powers given to the Advisory Board, see *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co., supra* at 543-544, and the broad powers given to the MBTA to determine the details of the operation of the Authority, see *Eastern Mass. St. Ry.* v. *Massachusetts Bay Transp. Auth.,* 350 Mass. 340 (1966); *Massachusetts Bay Transp. Auth.* v. *Boston Safe Deposit & Trust Co., supra;* G. L. c. 161A, § 3.

We believe that the division of authority with respect to the wage item in the budget requires that both sides exercise their powers with restraint. It allows the MBTA and its employees to bargain with each other well knowing that the Advisory Board can reduce the budget. On the other hand, the Advisory Board will be aware that rejection of the budget request will not necessarily invalidate any agreements but might result in reducing either the number of employees or the level of services or both. Any change in this allocation of responsibilities must necessarily be legislative.

The plaintiffs contend however that the powers accorded to the Advisory Board are broader than we have concluded. Relying primarily on the Governor's message to the Legislature[9] when he submitted legislation which was subsequently enacted as G. L. c. 161A in substantially the same form as the proposed legislation, the plaintiffs first argue that the legislative history of c. 161A indicates that the Advisory Board's budgetary powers are sufficiently broad to allow it to determine that cost-of-living increases

---

[9] In interpreting ambiguous legislation, courts may look to the legislative history, including the Governor's message, as an aid in arriving at a proper construction of the statute. See *Boston* v. *Massachusetts Port Auth.,* 364 Mass. 639, 646 (1974).

should not be paid. See 1964 Senate Doc. No. 820, at 10-12. While the Governor's message does indicate that the Advisory Board is to have broad budgetary powers, it says nothing specifically concerning the exercise of those powers when the MBTA's authority to fix wages is also involved. Nothing in our decision today is contrary to the interpretation expressed in the Governor's message; rather under our construction of the statute, the Advisory Board exercises broad budgetary review.

The plaintiffs, again relying primarily on the Governor's message, further argue that policy determinations, such as a reduction in service, are to be made by the Advisory Board and thus that the MBTA is not authorized to decide to reduce services or otherwise to change policies in order to allow the continued payment of cost-of-living increases. The Governor's message does interpret the legislation as meaning that "the Board of Directors [of the MBTA], along with the Advisory Board, will determine policy." 1964 Senate Doc. No. 820, at 11. Again, however, the message is silent concerning the relative authority of each group to determine policy. Our interpretation of the legislative scheme gives both groups a policy-making role concerning the fixing of compensation: the Advisory Board is given a more general role through its control over the budget and the MBTA is given a more specific role through its authority to manage labor relations.[10]

---

[10] The plaintiffs also rely on continued administrative practice to support their interpretation of G. L. c. 161A. They rely particularly on the practice of a number of unions of executing a memorandum of understanding with the MBTA covering changes in collective bargaining agreements. These memoranda contain provisions stating that their implementation is subject to the approval of the Advisory Board. The plaintiffs also rely on the practice of the MBTA of submitting supplementary budgets to the Advisory Board for approval in order to fund increased costs of collective bargaining agreements and arbitration awards, which budgets often contained statements that the new collective bargaining agreements would be subject to the Advisory Board's budgetary approval. This argument based on past administrative practice, however, is more directly applicable to the issue of whether collective bargaining agreements and arbitration awards are binding on the Advisory Board, an issue which we do not need to reach in deciding this case. We do note, however, that the record indicates that the

*Itemization of the budget.* General Laws c. 161A, § 5 (*i*), requires the submission of an itemized budget to the Advisory Board. The wage fix item of the 1977 budget contained a lump sum request of $121,129,474.

The plaintiffs contend that G. L. c. 161A required the MBTA to list as a separate item the amount estimated for cost-of-living increases. The essence of their argument on this point is that the budget should contain a breakdown of the wage item so that the Advisory Board can, by voting to reduce one of the more detailed items, such as cost-of-living increases, prevent the MBTA from using funds for those purposes. What we have said above in discussing the respective authority of the MBTA and the Advisory Board largely disposes of this argument. Since we have concluded that the Advisory Board does not have the authority to determine how the funds in the wage item are to be spent, no purpose would be served by requiring a more detailed breakdown of the components of the wage item.

Nor do the cases concerning proper itemization of budgets which were cited by the plaintiffs — *Bell* v. *Assessors of Cambridge,* 306 Mass. 249 (1940), and *Gilet* v. *City Clerk of Lowell,* 306 Mass. 170 (1940) — support the contention that the MBTA budget was not properly itemized. *Bell* and *Gilet* primarily concluded that, for a budget to be properly itemized, different kinds of expenses should be shown by separate items. The cost-of-living increases involved here are adjustments to the regular hourly rate of pay of employees; they are thus part of the wage rate. Since the cost-of-living adjustments are not basically different

claimed administrative practice relied on by the plaintiffs may not be persuasive. Some of the defendants point out that, although some of the unions did execute the above memoranda, these agreements were not submitted to the Advisory Board for approval and it was generally the practice of the MBTA and the unions to execute new agreements which made no reference to Advisory Board approval. Moreover, a supplemental budget has not always been submitted when increased costs arose due to cost-of-living adjustments, and, even when the Advisory Board refused to approve cost-of-living increases, these increases were still paid.

from wages, they are not required under *Bell* and *Gilet* to be listed separately.

In conclusion we emphasize that when an action for declaratory relief is properly brought, even if relief is denied on the merits, there must be a declaration of the rights of the parties. *Consolidated Cigar Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 845 (1977). *Attorney Gen.* v. *Kenco Optics, Inc.,* 369 Mass. 412, 418 (1976). *Haverhill Manor, Inc.* v. *Commissioner of Pub. Welfare,* 368 Mass. 15, 31, cert. denied, 423 U.S. 929 (1975). Thus, since the rights of the parties were not declared in this case, we order that the judgment be modified to declare that the Advisory Board is authorized to reduce the wage item of the MBTA's budget and that the MBTA is authorized to pay cost-of-living increases from the funds allocated to the wage item. As so modified, the judgment of the Superior Court is affirmed.

*So ordered.*