Camacho v. Board of Selectmen of Stoughton.

ROBERTA A. CAMACHO & another vs. BOARD OF SELECTMEN
OF STOUGHTON.

No. 88-P-1270.

Norfolk. February 21, 1989. — March 30, 1989.

Present: KASS, WARNER, & FINE, JJ.

*Municipal Corporations*, Referendum, Charter, Expenditure of money.
*Stoughton. Words*, "Town charges."

Registered voters of the town of Stoughton had no right under the town
   charter to a referendum on the question whether certain municipal salary
   increases, voted by the representative town meeting for fiscal year 1989,
   should take effect to the extent they exceeded 5.5%, where, since the
   particular increases challenged had not been the subject of a separate
   town meeting vote, the proposed referendum question could not be stated
   in language and form identical to the question presented to the town
   meeting, as required by the charter. [180-182]
This court expressed the view that, for purposes of a provision of the
   Stoughton town charter precluding a referendum on "town charges"
   appropriated by the representative town meeting, the term "town charges"
   meant ordinary municipal expenses that would appear on the annual
   budget. [182-183]

CIVIL ACTION commenced in the Superior Court Department
on June 24, 1988.

The case was heard by *Suzanne V. DelVecchio*, J., on a
motion for partial summary judgment.

*William A. Hahn* for the plaintiffs.

*Elizabeth A. Lane* for the defendants.

FINE, J. This appeal concerns the proper interpretation of
the referendum provision in the Stoughton town charter as it
affects a referendum petition seeking to have the voters of the
town pass on an across-the-board pay raise for nonunion town
employees.

Article 11 of the Stoughton town charter provides that "[a] vote passed at any representative town meeting authorizing the expenditures of any sum, as an appropriation other than *town charges* . . . (emphasis added)" may be the subject of a referendum.[1] The 1988 annual town meeting held in May voted to approve a budget including appropriations for salaries for town employees not covered by collective bargaining agreements.[2] A timely petition for a referendum, with the requisite number of signatures, was filed with the town clerk and presented to the selectmen. The petition sought to have the voters approve or disapprove "that portion of the annual budget presented to and approved by the 1988 Annual Town Meeting in the form attached hereto as 'A'[3] . . . providing pay raises for nonunion town employees including those positions on attachment 'B'[4] hereto in excess of 5.5% . . . ." The selectmen declined to

---

[1] Article 11 of the Stoughton town charter provides:
"A vote passed at any representative town meeting authorizing the expenditures of any sum, as an appropriation other than town charges, shall not be operative until after the expiration of five days, exclusive of Sundays and holidays, from the dissolution of the meeting. If, within such five days, a petition signed by not less than five percent of the registered voters, containing their names and addresses as they appear on the list of registered voters, is filed with the selectmen, requesting that the question or questions involved in such vote be submitted to the voters of the town, then the selectmen, within fourteen days after the filing of the petition shall call a special election which shall be held within ten days after the issuing of the call, for the purpose of presenting to the voters at large the question or questions so involved. . . . The questions shall be stated upon the ballot in the same language and form in which they were stated when finally presented to the representative town meeting by the moderator as appears from the records of the meeting."

[2] The actual vote was "to raise and appropriate the sum of $34,122,684, as detailed in the specific line items below and that such sums be expended only for the purposes described . . . ." The pages that followed listed, among other items, positions with accompanying salaries.

[3] Attachment "A" was a copy of the first page of the annual budget approved at the 1988 town meeting, which summarized the general budget appropriations.

[4] Rather than reproducing the eleven detailed pages of the budget setting forth specific appropriations, attachment "B" provided a summary table listing the nonunion positions in issue, their salaries in 1988 and 1989, and each position's grade and step level.

act on the petition. The two plaintiffs, both of whom were registered voters, taxpayers, and town meeting members, brought this mandamus action against the selectmen seeking, among other things, an order that the selectmen call a special election pursuant to the referendum petition.

The plaintiffs moved for summary judgment, relying on their complaint and the documents attached: the charter provision authorizing referenda; the petition for a referendum; and a letter from the Department of Revenue. One of the plaintiffs had written to the department concerning the referendum petition and had received a lengthy response from the chief of the department's property tax bureau. The response was to the effect that the pay raise issue raised in the petition would be a proper one for a referendum under the Stoughton town charter. The selectmen opposed the motion for summary judgment, relying on an affidavit from the town clerk.

The principal issue argued on the motion in the trial court was the meaning of the term "town charges" in the charter. The Superior Court judge who ruled on the motion defined the term "town charge" as "an expenditure drawn from appropriated funds approved by the town to meet ordinary municipal expenses." She viewed the salary increases as "town charges" within that definition and, thus, exempt from challenge by a referendum. Accordingly, she ordered summary judgment in favor of the defendants. We affirm the judgment because the form of the referendum petition is such that the petitioners do not have the right to a referendum. We also comment on the meaning of "town charges."

1. *There is no right to a referendum in this case because the petition does not conform to the requirements of the charter.* The question the petitioners seek to put to the voters of Stoughton is clear and understandable: should salary increases for nonunion employees of the town voted for fiscal year 1989 take effect to the extent that they exceed 5.5%? It should, as an abstract proposition, be possible to ascertain how the budget items would stand if the voters were to decide to disapprove that salary increase. Contrast *Gilet* v. *City Clerk of Lowell*, 306 Mass. 170, 176 (1940). A difficulty with the question the

petitioners seek to ask, however, is that it is not possible to express it in conformity with the requirements of Stoughton's charter. The charter requires that "[t]he questions . . . be stated upon the ballot in the same language and form in which they were stated when finally presented to the representative town meeting by the moderator as appears from the records of the meeting." Before Stoughton adopted its charter in 1972, its representative town meeting form of government was provided for in St. 1949, c. 213. Section 15 of c. 213 included a similar requirement for the form of the referendum question, except that the phrase "same language and form" was preceded by the word "substantially." The elimination of the word "substantially" in the charter reveals, we think, an intention to have the requirement as to the form of the referendum question strictly applied.

Under that strict construction, referendum questions asking whether the voters approve or disapprove appropriation measures would meet the formal requirements of the charter. The referendum petition in this case seeks to set aside salary increases which constitute a portion of certain appropriations voted. The particular salary increases challenged, in each case the portion of the total increase voted in excess of 5.5%, were not the subject of a vote or votes at the annual town meeting in May. Thus, the question the petitioners seek to pose cannot be stated in the same language and form as the question presented to the town meeting. We may not ignore the clear requirement of the charter as to the form of the question to be posed to the voters.[5] Indeed, although at first blush it might

---

[5] On an additional ground, we question whether the referendum petition was valid. There are numerous discrepancies between the petition and the vote with respect to position descriptions and salaries. Three titles listed in the Schedule "B" of the referendum petition are misidentified as compared to their listing on the annual budget. There are also discrepancies as to the salaries for four positions, in one case amounting to over $8,000. Further, Schedule "B," attached to the petition, lists the position of "Planning Bd Engineer" at the salary of $40,946 for "FY 1989," whereas the itemized budget attached to the annual budget adopted at the annual town meeting indicates zero funding for this position in fiscal year 1989. The discrepancies might be enough by themselves to invalidate the referendum petition. See

be reasonable to let voters express their views on a salary increase, there is sound reason behind a statutory scheme that prevents putting to the voters a segment of a budget item whose components may well be interdependent.

2. *The scope of the right to a referendum.* As the issue is likely to arise again, we comment on the scope of the right to a referendum in Stoughton. As noted above, that right extends to votes "authorizing the expenditures of any sum, as an appropriation other than town charges." The term "town charges" does not appear to be widely used. In *Stetson* v. *Kempton*, 13 Mass. 272, 278 (1816), and other cases discussing the term "necessary town charges" (see, for example, *Spurgias* v. *Morrissette*, 109 N.H. 275, 277-278 [1969]; *State* v. *Rand*, 366 A.2d 183, 190 [Me. 1976]), the use of the phrase arose in the context of determining whether a municipality could raise and expend funds for a particular purpose. The term is used here in a very different sense. If the meaning of "town charges" in the Stoughton town charter were as broad as the town's power to appropriate and expend funds, the referendum provision, dealing exclusively with expenditures,[6] would be for an "idle purpose, . . . a mere gesture." *Gorman* v. *Peabody*, 312 Mass. 560, 569 (1942). See *Moore* v. *School Comm. of Newton*, 375 Mass. 443, 449 (1978).

---

*Troland* v. *Malden*, 332 Mass. 351, 356 (1955); *Scalley* v. *Woburn*, 358 Mass. 815, 816 (1971). Contrast *Lafleur* v. *Chicopee*, 352 Mass. 746, 753 (1967).

There is also a question whether the salary increases were actually authorized by a vote of a special town meeting in January of 1988.

[6] In comparison, G. L. c. 43A, § 10, as amended through St. 1977, c. 814, the general provision governing referenda in those towns with representative town meeting but without charters, does not limit the referendum right to expenditures. The referendum right applies to any vote "authorizing the expenditure of twenty thousand dollars or more as a special appropriation, or establishing a new board or office or abolishing an old board or office or merging two or more boards or offices, or fixing the term of office or town officers, where such term is optional, or increasing or reducing the number of members of a board, or adopting a new by-law, or amending an existing by-law . . . ."

The general referendum provision for cities, G. L. c. 43, § 42, as amended through St. 1985, c. 477, has an even broader scope applying to "any measure except a revenue loan order [passed] by the city council or by the school committee."

Although the term "town charges" gives rise to some ambiguity in the present context, we think the motion judge correctly defined it to include ordinary municipal expenses which would appear on the annual town budget. The town clerk appended to her affidavit examples of town meeting warrants, dating back to 1961, which use the term "town charges" to describe the contents of the annual budget. That practice is of some significance in construing the meaning of language used in the charter adopted by the town in 1972. It is true that the term had been used by the Legislature as early as 1949 in connection with exemptions from referenda in Stoughton. Section 15 of St. 1949, c. 213, the special act which preceded the Stoughton charter, sets forth the right to a referendum using the identical term, "town charges," to define the measures which may not be the subject of a referendum. Whatever the term may have meant in the 1949 statute, however, its meaning in the Stoughton charter was certainly affected by its established local use prior to the town's adoption of the charter. Indeed, the difficulties inherent in posing a referendum question relating to an item included in the annual budget in conformity with the requirements of the charter as to the form of referendum questions supports the judge's broad definition of "town charges."

This broad interpretation of "town charges" does not leave the Stoughton referendum provision without force. It would apply at least to a vote on any nonmandatory expenditure not included within the annual budget. In that sense, with respect to fiscal matters, the scope of the referendum provision in the Stoughton charter is broader than the scope of the referendum provision applicable in towns which have representative town meeting governments but no charters. General Laws c. 43A, § 10 (note 6, *supra*), provides that there may be referenda relating to fiscal matters in such towns only as to votes "authorizing the expenditure of twenty thousand dollars or more as a special appropriation." If the voters of Stoughton want the right to challenge town meeting votes on ordinary municipal operating expenses included in the town budget, they will have to amend the town charter.

*Judgment affirmed.*