VICTOR LaBRANCHE & others [1] *vs.* A.J. LANE & COMPANY, INC. [2]

Essex. January 5, 1989. — April 24, 1989.

Present: WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Statute*, Construction, Repeal. *Municipal Corporations*, Referendum. *Zoning*, Amendment of by-law or ordinance, Special permit.

An amendment to the zoning ordinance of a city was subject to repeal by the voters, under the referendum procedure of G. L. c. 43, § 42. [727-730]

A referendum vote of a city, pursuant to G. L. c. 43, § 42, disapproving an amendment to the zoning ordinance, had the effect of rescinding the measure as of the date of its adoption by the city council, and a special permit expressly conditioned on the amendment was null and void. [730-732]

CIVIL ACTION commenced in the Superior Court Department on October 14, 1986.

The case was heard by *Richard S. Kelley*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John M. Kahn* for A.J. Lane & Company, Inc.

*Mitchell J. Sikora (Theodore Xenakis*, City Solicitor, with him) for the City Council of Haverhill.

*John F. Shea* for the plaintiffs.

*Robin E. Hall*, Special Assistant Attorney General, for the Secretary of the Commonwealth, amicus curiae, submitted a brief.

ABRAMS, J. At issue in this case is whether the voters of Haverhill validly rescinded an amendment to that city's zoning

---

[1] Eleven other landowners in Haverhill.

[2] The city council of Haverhill was originally a defendant but has joined the plaintiffs in this appeal, arguing in support of the validity of the referendum and the rescission of the special permit. The Secretary of the Commonwealth also filed a brief as amicus curiae, supporting the plaintiffs' and the city council of Haverhill's position.

ordinance by a referendum. The city council of Haverhill (council) voted in August and September, 1986, to amend c. 255, § 87, of the Haverhill zoning code, and to grant a special permit to A.J. Lane & Company, Inc. (Lane), to build a proposed planned unit development (PUD).[3] The PUD, to be known as Haverhill Green, was to include a hotel, motel, and conference center. The special permit was expressly conditioned on the zoning amendment, without which the PUD would not conform to zoning ordinance in effect. The plaintiffs, a group of landowners whose properties abut the site of the proposed PUD, filed a complaint in Superior Court under G. L. c. 40A, § 17, G. L. c. 214, § 1, and G. L. c. 231A, § 1, to appeal from the council's decision. They alleged that the proposed PUD would "not only 'impair the integrity' of the zoning district" but would "transform it entirely." At the same time, they initiated a referendum question pursuant to G. L. c. 43, § 42. As the council did not rescind the amendment, see § 42, it was referred to the voters for a special city election. The voters of Haverhill rejected the zoning amendment in November, 1986, by a two-to-one margin. The council then voted to invalidate the special permit. The plaintiffs moved for summary judgment, and Lane moved for partial summary judgment. A Superior Court judge allowed the plaintiffs' motion and denied Lane's motion, concluding in a comprehensive memorandum of decision that a referendum could rescind an amendment to a

---

[3] Lane applied for the amendment and special permit on July 7, 1986. On August 22, 1986, citizens of Haverhill (including the plaintiffs) filed a petition protesting the proposed amendment. The council voted six-to-three in favor of the amendment on August 26, 1986, but the president of the council ruled that the protest petition had triggered the requirement in G. L. c. 40A, § 5, that the amendment garner a three-fourths majority, and that, accordingly, the amendment had failed. Thereafter the assistant city solicitor rendered his opinion that the protest petition was ineffective to trigger the three-fourths requirement. On September 8, 1986, citizens filed a second petition containing over 4,000 signatures, but, on September 9, the council voted to amend the minutes of the August 26 meeting to reflect that the amendment passed by a vote of six-to-three. The council also voted that day to grant Lane its special permit. The citizens filed a referendum petition on September 15, 1986.

zoning ordinance.[4] Pursuant to G. L. c. 231A, he declared that the amendment to the zoning ordinance was rescinded and that Lane's special permit was null and void as a result of the referendum. Lane appeals. We transferred the case to this court on our own motion. We affirm.

Lane argues that amendments to zoning ordinances are not subject to repeal by referendum. Alternatively, Lane asserts that the referendum cannot retroactively affect the validity of a special permit issued prior to the referendum, while the enabling amendment was in effect. Lane therefore asks that we reverse the judgment of the Superior Court and order partial summary judgment in its favor, with a declaration either that G. L. c. 43, § 42, does not apply to repeal of an amendment to a zoning ordinance, or, in the alternative, that the validity of the special permit was unaffected by the referendum in the circumstances of this case.

1. *The application of the referendum to a zoning ordinance.* Lane contends that G. L. c. 40A, § 5, as amended through St. 1984, c. 189, § 47,[5] provides the only means by which a zoning ordinance may be changed or repealed. Because G. L. c. 40A, § 5, applies specifically to zoning ordinances, Lane argues that it takes precedence over the general provision for repeal by referendum, contained in G. L. c. 43, § 42. As the procedures set forth in c. 40A, § 5, do not include referenda, Lane concludes that the referendum was ineffective to repeal the amendment to the zoning ordinance.

By its terms, G. L. c. 43, § 42, applies to "any measure, except a revenue loan order, [passed] by the city council." The

---

[4] In 1972, we said that a referendum vote which purported to disapprove an amendment to a zoning by-law was valid. See *Gastown, Inc.* v. *Registrars of Voters of Agawam*, 361 Mass. 876 (1972). The question in that case was whether the referendum petitions contained enough valid signatures. Having determined that question in the affirmative, we ordered a decree declaring that the referendum vote validly set aside the amendment to the by-law. *Id.* at 877.

[5] The 1984 amendment simply made two grammatical corrections in the first paragraph of § 5. The statute was amended again in 1987. St. 1987, c. 685, § 3, effective April 5, 1988. The latter amendment does not apply to this case; it does not change any of the language at issue in this case. See note 6, *infra*.

statute provides that, if twelve per cent or more of the registered voters in a city file a protest against any such a measure, the measure "thereupon and thereby is suspended from taking effect." The city council must then "immediately reconsider" the measure. If the city council does not vote to rescind the measure, it must be submitted to the voters, "and such measure . . . shall forthwith become null and void unless a majority of the registered voters voting on the same . . . vote in favor thereof." *Id.*

General Laws c. 40A, § 5, reads in pertinent part: "Zoning ordinances . . . may be adopted and from time to time changed by amendment, addition or repeal, but only in the manner hereinafter provided." The remainder of the section sets forth the means of adoption or change of zoning ordinances, with specific provisions concerning notice, hearing, and two-thirds or three-fourths votes. It provides further that a zoning ordinance is effective from the date of adoption or amendment. Because the section makes no mention of the use of a referendum to repeal a zoning amendment, Lane concludes that the zoning statute occupies the entire field in amending or repealing zoning ordinances and does not permit a referendum.

"[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute an harmonious whole consistent with the legislative purpose." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). "[W]e assume, as we must, that the Legislature was aware of the existing statutes" when it enacted the subsequent statute. *Hadley* v. *Amherst*, 372 Mass. 46, 51 (1977). "We will find an implied repeal of one statute by another only when 'the prior statute is so repugnant to, and inconsistent with, the later enactment that both cannot stand.'" *Boston* v. *Board of Educ.*, 392 Mass. 788, 792 (1984), quoting *Commonwealth* v. *Graham*, 388 Mass. 115, 125 (1983).[6] Implied repeal of a

---

[6] The *referendum statute* (G. L. c. 43, § 42) was enacted in 1915 and amended in 1935, 1961, 1967, and 1985. St. 1915, c. 267, Part I, § 42. St. 1935, c. 68, § 2. St. 1961, c. 550. St. 1967, c. 406, § 2. St. 1985, c. 477, § 4. The present zoning amendment statute (G. L. c. 40A, § 5) was

statute is not favored. See *Dedham Water Co.* v. *Dedham*, 395 Mass. 510, 518 (1985); *Cohen* v. *Price*, 273 Mass. 303, 308 (1930).

The referendum statute, by its terms, applies to "the final passage of any measure, except a revenue loan order, by the city council." G. L. c. 43, § 42. The word "measure" is defined in G. L. c. 43, § 37, "[to] mean an ordinance, resolution, order or vote passed by a city council." Thus, on its face, the referendum statute encompasses zoning ordinances, and Lane has not argued to the contrary. See *Gorman* v. *Peabody*, 312 Mass. 560, 562-565 (1942). Cf. *Fantini* v. *School Comm. of Cambridge*, 362 Mass. 320 (1972) (vote of school committee not to reappoint superintendent of schools not a "measure" subject to referendum); *Dooling* v. *City Council of Fitchburg*, 242 Mass. 599, 602 (1922) (city council orders directing mayor to execute construction contracts not " 'measures' within the jurisdiction of the city council," hence, not subject to referendum). The fact that the Legislature specified one exception (for revenue loan orders) strengthens the inference that no other exception was intended. *Iannelle* v. *Fire Comm'r of Boston*, 331 Mass. 250, 252 (1954). General Laws c. 43, § 42, embodies an important democratic value and "should be given the full sweep intended by the Legislature." *Gilet* v. *City Clerk of Lowell*, 306 Mass. 170, 175 (1940).

The referendum gives the voters a veto power over measures to which it applies. *Moore* v. *School Comm. of Newton*, 375 Mass. 443, 446-447 (1978); *Morra* v. *City Clerk of New Bedford*, 340 Mass. 240, 242 (1960). Referendum does not permit voters "to bring about something that the city council itself could not accomplish directly." See *Gilet* v. *City Clerk of*

---

enacted in 1975 and amended in 1977, 1984, and 1987. St. 1975, c. 808, § 3. St. 1977, c. 829, §§ 3B & 3C. St. 1984, c. 189, § 47. St. 1987, c. 685, § 3. The predecessor to the present zoning amendment statute (G. L. c. 40, § 30) was enacted in 1920 and amended in 1922, 1926, 1929, and 1954. St. 1920, c. 601, § 9. St. 1922, c. 40. St. 1926, c. 59 & c. 216. St. 1929, c. 39. St. 1954, c. 368, § 2. Thus, each statute was "existing" when the Legislature substantially reenacted the other, and neither can be considered meaningfully "later" than the other.

*Lowell, supra.* Cf. *Sparta* v. *Spillane,* 125 N.J. Super. 519, 527 (1973). Nothing in the referendum process detracts from the notice, hearing, and other requirements of The Zoning Act. Cf. *Sparta* v. *Spillane, supra; Hancock* v. *Rouse,* 437 S.W.2d 1, 4 (Tex. Civ. App. 1969).

The Zoning Act contains no explicit or implied exception to the referendum statute, and the referendum is neither repugnant to nor inconsistent with the purposes of The Zoning Act. We will not imply an exception to it unless such an exception is clearly intended. See *Boston* v. *Board of Educ.,* 392 Mass. 788, 792-796 (1984); *Cohen* v. *Price, supra.* We therefore conclude that amendments to Haverhill's zoning ordinance are subject to referendum.

2. *Retroactivity of the referendum.* Lane also argues that, even if the referendum applies to zoning ordinances, it applies only as of the date the referendum petition is filed, but does not operate to defeat rights created before the petition is filed.[7]

---

[7] Lane makes a similar argument in support of its contention that a referendum cannot be used to repeal a zoning ordinance. Lane argues that because a zoning ordinance takes effect immediately when passed, a subsequent referendum would have the effect of retroactively repealing an effective law when there might have been reliance on it in the interim. Whatever the merits of this argument as a general proposition (but see *Brett* v. *Building Comm'r of Brookline,* 250 Mass. 73, 80-81 [1924]), it has no force in the present case. Lane's special permit was explicitly conditioned on the validity of the zoning amendment that made the permit possible. The amendment and permit were hotly contested. See note 3, *supra.* It would not have been reasonable for Lane to rely on the amendment and special permit in these circumstances and from the record it does not appear that Lane in fact did so rely. The referendum statute requires that the petition initiating a referendum be filed within twenty days of final passage of the measure in question. G. L. c. 43, § 42. The potential time for uncertainty is therefore very brief. Compare *Sparta* v. *Spillane, supra; Elliott* v. *Clawson,* 21 Mich. App. 363, 376 (1970).

Lane draws an analogy between city zoning ordinances and emergency laws enacted by the Legislature, in so far as both take effect immediately on adoption or enactment. G. L. c. 40A, § 5. Art. 48, The Referendum, I and II of the Amendments to the Constitution of the Commonwealth. Under art. 48, The Referendum, II, as amended, "an emergency law shall contain a preamble setting forth the facts constituting the emergency, and shall contain the statement that such law is necessary for the immediate preservation of the public peace, health, safety or convenience." Such a law is subject to referendum. It is not suspended in operation pending the

Lane points to the language of the referendum statute, which provides that, when a referendum petition is filed, the measure "shall thereupon and thereby be suspended from taking effect." If the measure is not "entirely rescinded" by the city council, it is to be submitted to the voters in a referendum. If it is not approved by a majority of the voters, it "shall forthwith become null and void." G. L. c. 43, § 42. Lane contends that this language establishes that the referendum does not nullify the zoning amendment retroactively to the date of passage, but only as of the date of the filing of the referendum petition. Lane contrasts the phrase "entirely rescinded," used with respect to the council's action, with the phrase "forthwith become null and void." Lane contends that the use of these two different formulations in the same sentence indicates an intended distinction; that the council's action rescinds the measure as of the date of enactment, but that the voters' power through the referendum does not work retroactively. The special permit, approved by the city council on September 9, 1986, would therefore not be affected by the referendum petition filed on September 15, 1986, because the amendment on which the permit was based was valid at the time and was only invalidated later, and prospectively. We do not agree.

We have held (under former G. L. c. 40A, § 7) that a veto by a mayor renders a zoning ordinance "nugatory." *Kubic* v. *Chicopee*, 353 Mass. 514, 516 (1968). Under G. L. c. 40A, § 5, when the Attorney General disapproves a town zoning by-law, "the previous zoning by-law . . . shall be deemed to have been in effect from the date of such vote." The same principle applies here: The referendum voided the zoning amendment. Generally, "forthwith . . . null and void" means

---

outcome of the referendum, *Molesworth* v. *Secretary of the Commonwealth*, 347 Mass. 47, 48 (1964), but is "repealed" by a subsequent negative vote. We do not find this analogy persuasive. It of course does not support the argument that referendum should not apply at all to zoning. As far as the lack of retroactivity is concerned, the difference between an "emergency" law, as defined in art. 48, The Referendum, II, and a zoning ordinance justifies different treatment. See generally *Molesworth* v. *Secretary of the Commonwealth*, *supra* at 48-49.

immediately null and void. However, we read a statute as a whole, *Commonwealth* v. *Lamb*, 365 Mass. 265, 268-269 (1974), so as to accomplish the purpose for which it was enacted. *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 312-314 (1949). Read as a whole, the statute shows a legislative intent that the referendum vote rescinds the ordinance as of the date of enactment. As the Superior Court judge noted: "[T]he statute's explicit reference to rescission makes clear the defect in [the] defendant's argument. The city council may either rescind the measure or submit it to the electorate with the implicit understanding that *they* [may] rescind it, i.e., render it null and void [from the date of enactment]." Any other construction would be inconsistent with the legislative purpose in permitting the referendum.

The referendum rescinded the amendment to the zoning ordinance. Because the special permit was expressly conditioned on the amendment, it cannot survive the defeat of the amendment. The Superior Court judge therefore correctly declared that the amendment was subject to the referendum and the special permit was null and void.

*Judgment affirmed.*