**In re Janice M. EDRY, Debtor.**

**Janice M. EDRY, Plaintiff,**

v.

**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK and Michael Gurtler, Defendants.**

Bankruptcy No. 96–44717–JFQ.
Adv. No. 96–4368.

United States Bankruptcy Court, D. Massachusetts.

Oct. 25, 1996.

Lawson Williams, Shapiro & Kreisman, Framingham, MA, for Rhode Island Hospital Trust National Bank, et al.

Michael Gurtler, Sudbury, MA, pro se.

Mark L. Nestor, Fitchburg, MA, for Janice M. Edry.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

The Debtor, Janice M. Edry, brings this complaint requesting a decree declaring that the foreclosure on her home was improperly conducted and hence is void under Massachusetts law. Resolution of the controversy involves principles of diligence and good faith enunciated by the Supreme Judicial Court of Massachusetts. At the completion of trial, I ruled in the Debtor's favor. Set forth here in complete fashion are the findings of fact and conclusions of law dictated into the record in abbreviated form at trial.

## I. FACTS

The Debtor, a divorced mother with adult children, lives alone at 41 Nashoba Road, Acton, Massachusetts, whose title stands in her name alone. She is self-employed in the operation of a cleaning agency, working out of her home. The defendant, Rhode Island Hospital Trust National Bank, is the holder by assignment of a mortgage on the home. All reference here to the "Bank" will include it and its assignor.

Beginning in at least September of 1994, the Debtor experienced difficulty making timely payments on the Bank's mortgage. She was constantly late in her payments through all of 1995. This prompted the Bank to telephone her on numerous occasions, leaving messages on her recorder requesting a return call. It also sent her delinquency notices. The Debtor's response was to make the payment due, but to do so about a month late. She called the Bank on several occasions attempting to resolve the situation, but was unable to speak to anyone and left messages on the Bank's recorder. In November of 1995, the Bank accelerated the full balance due on the mortgage and gave the Debtor 30 days to make payment in full.

On February 13, 1996, the Bank sent the Debtor's most recent check back to her. That check was apparently for the payment due in January, although the Debtor testified she thought it was for the February payment. On February 22, 1996, the Bank instructed its lawyers to commence foreclosure. Upon receiving a letter from the Bank's law firm, the Debtor called the firm. The paralegal in charge of the foreclosure told her the Bank would not accept further monthly payments. The Debtor asked for current information on the balance of her account. The paralegal told her the information would be faxed to her at her home Fax machine, but that was never done.

The Bank commenced the foreclosure process and scheduled a sale for August 1, 1996. It hired as the auctioneer Paul E. Saperstein Co., Inc. ("Saperstein"). Saperstein is a firm of highly experienced auctioneers. It employs several auctioneers and conducts many hundreds of residential foreclosure auctions each year. The Bank's law firm instructed Saperstein not to promote the sale through so-called "display" advertisements. Display ads are placed in the real estate pages of a newspaper and measure two columns wide and four inches high. Saperstein advertises its auctions though such display ads in at least 80% of the residential mortgage foreclosures it conducts. The Bank, through its law firm, advertised the sale only by placing a statutorily prescribed notice of the sale in the legal section of the newspaper once a week

for three successive weeks. *See* Mass.Gen.L. ch. 244, § 14. The Bank also gave the Debtor notice of the sale by mail, as required by the statute.

On August 1, 1996, an auctioneer employed by Saperstein, Ronald P. Pelletier, arrived at the Debtor's home about one-half hour before the scheduled 10:00 a.m. sales time, hanging his auction flag on a tree in the front yard. Lee DeFillipio, the paralegal in charge of the foreclosure, arrived at about the same time. Four potential buyers appeared. Pelletier qualified three as bidders because they had the required $5,000 deposit with them. The Debtor did not appear. Pelletier made no effort to seek her permission for the potential bidders to inspect the inside of the home.

Bidding began at $75,000. As the bidding rose, DeFillipio made one bid of $85,535.81 on behalf of the Bank. This was the precise balance of the Bank's debt. The bidding continued and ended at $86,500, which was bid by the defendant Michael Gurtler. Pelletier and Gurtler then signed a memorandum of sale for $86,500, and Gurtler paid a $5,000 deposit. The memorandum states the balance is to be paid within thirty days.

The Bank made no effort to obtain a current appraisal indicating the fair market value of the property. Nor did it offer testimony at trial of the property's fair market value. William F. Curley, Jr., a highly qualified appraiser, testified for the Debtor. Based upon his testimony, I find the property had a fair market value of $190,000 at the time of foreclosure.

On August 27, 1996, the Debtor filed with this court a chapter 13 petition and the present complaint. Her intention in the chapter 13 proceeding is to cure arrearages on the mortgage and make current payments. I immediately issued a temporary restraining order enjoining consummation of the sale pending a hearing on a preliminary injunction. On September 4, 1996, after a nonevidentiary hearing, I granted a preliminary injunction enjoining the sale until a trial could be held. On September 25, 1996, at the conclusion of trial, I entered an order voiding the foreclosure.

## II. INVALIDITY OF FORECLOSURE

■ Under Massachusetts law, a foreclosing mortgagee must do more than comply with the procedure prescribed by statute. "It has been repeatedly held in this Commonwealth, and elsewhere, that a mortgagee who attempts to execute a power of sale contained in a mortgage is bound to exercise good faith, and to use reasonable diligence to protect the rights and interests of the mortgagor under the contract.... It is his duty, for the benefit of the mortgagor whom he represents, so to act in the execution of the power as to obtain for the property as large a price as possible." *Clark v. Simmons,* 150 Mass 357, 359, 23 N.E. 108, 108 (1890). "Good faith and reasonable regard for the interest of the mortgagor will not permit him to make a sale when no one will offer a price which another could reasonably think of accepting if he were obliged to sell the property at a day's notice for what it would bring." *Id.,* 150 Mass. at 360, 23 N.E. at 108.

■ A disparity between the foreclosure sales price and fair market value is not sufficient of itself to invalidate a foreclosure, but such disparity plus other circumstances can be. *Sher v. South Shore Nat'l Bank,* 360 Mass. 400, 274 N.E.2d 792 (1971); *Manoog v. Miele,* 350 Mass. 204, 213 N.E.2d 917 (1966); *West Roxbury Co-op. Bank v. Bowser,* 324 Mass. 489, 87 N.E.2d 113 (1949); *DesLauries v. Shea,* 300 Mass. 30, 13 N.E.2d 932 (1938); *Chartrand v. Newton Trust Co.,* 296 Mass. 317, 5 N.E.2d 421 (1936); *Cambridge Sav. Bank v. Cronin,* 289 Mass. 379, 194 N.E. 289 (1935); *Gadreault v. Sherman,* 250 Mass. 145, 145 N.E. 49 (1924). The Supreme Judicial Court of Massachusetts has on several occasions voided a foreclosure sale when sufficient circumstances were present. For example, in *Bon v. Graves,* 216 Mass. 440, 103 N.E. 1023 (1914), the mortgagee chose to place the required legal notices in a newspaper which had a more limited circulation than five other local newspapers. And, although he knew that two owners of nearby properties were interested in purchasing the mortgaged property, he gave them no personal notice of the sale. Nor did he give notice of the sale to the plaintiff, who held a second

mortgage on the property. The property sold at foreclosure for $2,900, much less than its fair market value of at least $5,000. The trial judge reported the case for adjudication by the full court. Chief Justice Rugg, writing for the court, held that the inadequate price, combined with the other circumstances, invalidated the foreclosure.

In *Sandler v. Silk*, 292 Mass. 493, 198 N.E. 749 (1935), property worth $7,800 was sold at foreclosure for $1,200, subject to a small first mortgage. Having given the required personal notice to the owner and notice by publication, the mortgagee gave no personal notice of the sale to the plaintiff, an attaching creditor, despite the mortgagee's promise to do so. After ruling the plaintiff was not entitled to notice beyond publication, the court stated: "Nevertheless, the fact that in these circumstances no notice was sent to the plaintiff is evidence that good faith was not used to obtain the best reasonable possible price." 292 Mass. at 497, 198 N.E. at 751. The court held there was sufficient evidence to support the finding for the plaintiff made below and affirmed the damage judgment entered by the trial court. *See also Union Market Nat'l Bank v. Derderian*, 318 Mass. 578, 62 N.E.2d 661 (1945) (sale invalidated because of inadequate price and auctioneer's unadvertised requirements that potential purchasers must deposit $1,000 to qualify as bidders); *Kavolsky v. Kaufman*, 273 Mass. 418, 173 N.E. 499 (1930) (affirming verdict for defendant in mortgagee's deficiency action because property sold for $2,400 after auctioneer refused to sell to a $9,000 bidder due to bidder's failure to make a $1,000 deposit rather than the more usual deposit of $200.); *Clark*, 150 Mass. at 360–61, 357, 23 N.E. at 108–09 (invalidating $1,200 foreclosure sale where property's value was at least $1,400 and mortgagee did not give junior mortgagee personal notice of sale despite a request for such notice).

In the present case, there is strong evidence the Bank did not use reasonable diligence to protect the Debtor's interests. The sales price of $86,500 is only 45% of the property's $190,000 fair market value. Moreover, the Bank made no attempt to ascertain the fair market value. Nor did it do anything to enhance the bidding beyond making its own bid at precisely the balance of its mortgage.

Most significant is the Bank's decision, despite the common practice to the contrary, to give only the bare notice required by statute. This consists of publishing once each week, for three successive weeks, a small notice, phrased in legalese, in the legal pages of a local newspaper, and sending a copy of the notice to the owner. *See* Mass.Gen.L. ch. 244 § 14. The only information about the property contained in the statutory notice is a metes and bounds description of the land area. *Id.* This is hardly a paradigm of marketing technique. Nor is it consistent with general practice. Based on the Saperstein testimony, I find that at least 80% of residential mortgage foreclosures in this area are advertised through so-called display ads, in addition to the required statutory publication. These ads are twice as large as the statutory notice, appear in the real estate section of the newspaper rather than in its legal section, contain much more information than does the legal notice, and generally are far better designed to sell the property. The Bank's failure to place such ads was a conscious decision on its part, not a mere lapse. Despite knowing that Saperstein normally promoted foreclosures through display ads, the Bank expressly instructed Saperstein not to do so in this instance.

The Supreme Judicial Court of Massachusetts has not dealt with a foreclosure that has been advertised through only the statutory notice in the face of a customary practice of more extensive advertising. But it has been faced with analogous circumstances. In *Kavolsky*, 273 Mass. at 420–23, 173 N.E. at 500–01, the court invalidated a foreclosure largely because the auctioneer required the high bidder to deposit $1,000 rather than the more customary $200. And in *Union Market Nat'l Bank*, 318 Mass. at 580–82, 62 N.E.2d at 661–63, potential purchasers had to first deposit $1,000 with the auctioneer. The published notice of the sale did not contain this requirement. It merely referred to a $500 deposit to be made by the winning bidder and stated other terms would be announced at the sale. The court found the $1,000

deposit requirement to be opposed to common practice and voided the sale. I believe the court would do the same here because of the Bank's conscious decision to place only minimal advertising.

I therefore conclude the Bank did not make, in good faith, a diligent effort to protect the interest of the Debtor. I accordingly invalidate the foreclosure.

There is nothing inconsistent in the holding of *Pemstein v. Stimpson,* 36 Mass.App. Ct. 283, 630 N.E.2d 608 (1993). That case concerned the liability of a guarantor for a deficiency following foreclosure. The court held the guarantor had expressly waived his right to complain about the manner in which the foreclosure was conducted. Moreover, the mortgagee there did much to promote the sale, which was of commercial property. It gave personal notice to real estate brokers, sent out hundreds of fliers and placed display ads in the Boston Globe, the Banker and Tradesman, the Worcester Telegram & Gazette, the New England Real Estate Journal and the Wall Street Journal.

### III. RIGHTS OF HIGH BIDDER

It is of course true that a good faith purchaser for value takes property free of an unknown lien or interest held by another party, for example, free of an unrecorded lien. That doctrine does not protect the defendant Gurtler, for two reasons. First, Gurtler is an experienced purchaser at foreclosure sales who knew of the usual practice of advertising through display ads. Secondly, and more basically, never having completed the sales transaction, Gurtler is not a purchaser. He merely contracted to purchase. The contract being invalid, he is entitled to the return of his $5,000 deposit. In sum, he lacks the equities favoring a bona fide purchaser for value.

A separate order invalidating the sale was entered on September 25, 1996.