PAUL PEHOVIAK & another[1] *vs.* DEUTSCHE BANK NATIONAL
TRUST COMPANY.

No. 12-P-1485.

Worcester. November 5, 2013. - March 11, 2014.

Present: CYPHER, BROWN, & FECTEAU, JJ.

*Mortgage,* Foreclosure, Junior lien. *Notice,* Foreclosure of mortgage. *Real Property,* Mortgage. *Taxation,* Federal tax lien. *Lien. Practice, Civil,* Discovery, Findings by judge, Waiver. *Damages,* Mitigation. *Waiver.*

At the jury-waived trial of a civil action challenging the defendant mortgagee's purchase (for a price that made no payment of the intervener's subordinate mortgage) of a parcel of real property following the defendant's notification of the plaintiff (who was the highest bidder at the defendant's foreclosure sale of the property) that the plaintiff was in default on the sale of the property, judgment properly entered against the defendant, where the defendant's refusal to provide the plaintiff with evidence that the defendant had given timely and proper notice of the pending foreclosure to subordinate lienholders (including the Internal Revenue Service) constituted a breach of the defendant's duty to exercise good faith and to use reasonable diligence to protect the rights of the mortgagor and the intervener [61-64]; where there was no error in the judge's finding that the intervener offered sufficient evidence of causation in the form of proof that the plaintiff was ready and able to tender the purchase price [64-65]; and where the defendant, by failing to raise mitigation of damages as an affirmative defense in its answer, had waived that claim [65-66].

CIVIL ACTION commenced in the Superior Court Department on April 10, 2006.

The case was heard by *John S. Ferrara,* J.

*Marissa I. Delinks* for the defendant.

*Howard B. D'Amico* for the intervener.

FECTEAU, J. The defendant, Deutsche Bank National Trust Company (Deutsche Bank), appeals from a judgment in the

---

[1]Commerce Bank and Trust Company, intervener.

amount of $141,784.20,[2] plus interest, entered in favor of the intervening plaintiff, Commerce Bank and Trust Company (Commerce), after a jury-waived trial. Deutsche Bank claims that the judge erred in (1) applying G. L. c. 244, § 14, under the facts presented, (2) finding that Deutsche Bank's failure to act in good faith and to use reasonable diligence to complete and close the foreclosure sale with Pehoviak caused Commerce harm, and (3) failing to account for Commerce's lack of mitigation efforts. We conclude that (1) Deutsche Bank breached its duty to exercise reasonable diligence by refusing the prospective buyer's request to provide him with evidence that it had sent statutorily required notices of foreclosure to junior lienholders, (2) the judge's finding on causation was not clearly erroneous, and (3) Deutsche Bank waived the affirmative defense of mitigation of damages by failing to raise it in its first responsive pleading.

1. *Background.* Deutsche Bank was the holder of a first mortgage on real property in Westborough, Massachusetts. The mortgagors defaulted on the mortgage loan, and Deutsche Bank foreclosed on the property. The mortgagors owed Deutsche approximately $500,000. Commerce was the holder of a mortgage on the same property securing a home equity loan, which was subordinate to Deutsche Bank's mortgage. The mortgagors were also in default on Commerce's loan and owed Commerce approximately $170,000. In addition, there were two other liens on the property that were subordinate to Commerce; one was a Federal tax lien, and the other was a writ of attachment by one Dennis Armstrong.

At the foreclosure sale on March 6, 2006, Pehoviak was the highest bidder with a bid of $670,000. Commerce was prepared to bid as high as $650,000 to protect its interest, but when Pehoviak's bid exceeded that amount, Commerce did not make a bid and did not register a contingent bid before, during, or after the sale.[3] Deutsche Bank was the next highest bidder on

---

[2]Because Pehoviak's bid was for $670,000, and Deutsche Bank's first mortgage secured the first $528,215.80, the surplus of $141,784.20 would have been available to Commerce Bank as the holder of the second mortgage. The judge correctly awarded this amount to Commerce as damages.

[3]Commerce had received an appraisal of the property in the amount of $770,000.

the property with a bid of the principal balance owed under its mortgage, which was $528,215.80.

In the memorandum of sale and on a buyer information sheet, Pehoviak indicated that he would not be financing the transaction and that it would instead be a cash purchase. In fact, Pehoviak was purchasing the property with the expectation of assigning his bid to Thomas Belekewicz. Pehoviak testified that he had used Belekewicz to finance a number of prior transactions. Under the terms of the memorandum of sale, Pehoviak was required to pay the balance of the purchase price (less his $10,000 deposit) by March 21, 2006, or by April 5, 2006, if "the Buyer elect(s) to finance the purchase of the subject property."

On March 16, 2006, a representative from Attorney Arthur Brecher's office informed Deutsche Bank's counsel of Pehoviak's assignment of his bid to Belekewicz. Attorney Brecher, who appeared to be acting on behalf of Pehoviak and Belekewicz, also requested documentation that Deutsche Bank had sent the required notice of foreclosure, under G. L. c. 244, § 14, to the Internal Revenue Service (IRS).[4] It is undisputed that prior to the foreclosure sale Deutsche Bank sent the required notice of foreclosure to the IRS, received a waiver of notice from Armstrong, and had the documentation on file.

On March 16, 2006, Deutsche Bank's counsel at Ablitt & Charlton, P.C. (Ablitt & Charlton), Attorney Deirdre Cavanaugh, responded that an assignment of Pehoviak's bid was prohibited under the memorandum of sale without the "express written consent of [Deutsche Bank]" and that Deutsche Bank would not consent to Pehoviak's proposed assignment to Belekewicz. Counsel for Deutsche Bank also informed Attorney Brecher that she considered Pehoviak's attempted assignment a repudiation of his intent to perform under the memorandum of sale and asked that Pehoviak confirm this intent within twenty-four hours. Pehoviak's counsel responded within the twenty-four-hour period that he did not intend to repudiate Pehoviak's right to purchase the property, agreed that the bid could not be assigned without Deutsche Bank's consent, and confirmed that the property should be deeded to Pehoviak. Attorney Brecher once again requested

---

[4]General Laws c. 244 § 14, requires the notices for a nonjudicial foreclosure sale to be sent at least fourteen days prior to the sale.

documentation that the required statutory notices had been sent to the IRS.

Deutsche Bank claims that "the trial evidence actually showed that Deutsche Bank's counsel did respond to Attorney Brecher's March 16, 2006 request and sent documents in counsel's file at that time, believed to be the green card for the I.R.S. and the waiver received from Armstrong." In fact, Attorney Steven Ablitt, of Ablitt & Charlton, testified, "I don't know exactly what my paralegal would have sent 'em. My understanding was whatever he requested, we sent to him."[5] Thus, Attorney Ablitt had no personal knowledge that the two notices were actually sent.[6]

From March 17, 2006, to April 5, 2006, counsel for Pehoviak repeatedly requested documentation that the required notices had been sent to both the IRS and Armstrong and emphasized Pehoviak's continued commitment to completing the sale.[7] Attorneys for Deutsche Bank testified that they determined not

[5]In a facsimile (fax) transmission dated March 20, 2006, Attorney Brecher stated he represented "the bank that Paul Pehoviak has asked to finance the acquisition of the foreclosure property." However, at trial Attorney Brecher testified that he represented Belekewicz. Attorney Richard LeClair, III (who began representing Pehoviak on or before March 21, 2006), became involved sometime after Attorney Cavanaugh at Ablitt & Charlton sent the electronic mail transmission dated March 16, 2006, stating that Pehoviak's request for an assignment constituted a repudiation of the memorandum of sale. Ablitt & Charlton was unresponsive to requests by LeClair for documentation of the lien notices.

[6]The correspondence between Attorney Brecher and Deutsche Bank's attorneys at Ablitt & Charlton supports the contention that neither Attorney Brecher nor Attorney LeClair ever received the notices from Deutsche Bank's counsel. In a March 20, 2006, fax to Attorney LeClair, Attorney Brecher states that "there was no proper 20 day notice given to the IRS just a green card with other." This statement seems to imply that, at most, Attorney Brecher only received a copy of the actual post office "green card" certifying that some document was sent to the IRS. However, it seems that Attorney Brecher never received the actual letter containing the notice of foreclosure sale to the IRS.

[7]Additionally, when Attorney Brecher first contacted Ablitt & Charlton it appears as if he was acting on Pehoviak's behalf. In fact, in his March 16, 2006, fax to Ablitt & Charlton, Attorney Brecher writes "*we* have not repudiated *our client's* right to purchase, nor do we intend to do so" (emphasis added). In the fax, he also refers to what Pehoviak heard at the bidding sale, which further supports the fact that, at this point, Attorney Brecher was still acting on Pehoviak's behalf.

to provide the documentation of the notice and waiver of notice to Pehoviak because they did not believe Pehoviak was serious about concluding the sale. Deutsche Bank now argues they were under no obligation to send the documentation to Attorney Richard LeClair, III, because he first contacted counsel for Deutsche Bank after the memorandum of sale's required closing time of March 21, 2006.[8] Deutsche Bank also claims that Attorney Brecher and his client, Belekewicz, were "strangers to the deal," and Attorney Ablitt testified that he allegedly sent the documents to Attorney Brecher only as a "professional courtesy." In sum, Deutsche Bank argues it did not have to provide documentation of the IRS and Armstrong notices because Pehoviak did not close within what Deutsche Bank claims was the required fifteen days, and he was therefore in breach of the memorandum of sale.[9]

However, when counsel for Deutsche Bank responded to Attorney LeClair's first facsimile transmission of March 21, 2006, LeClair was not informed that the conveyance was past the fifteen-day deadline and thus untimely, nor was Pehoviak's compliance with the closing requirements demanded at that time. Indeed, Attorney LeClair was given no reason to believe that the transaction was cancelled due to untimeliness. Rather, the electronic mail communication focused on Deutsche Bank's position that Pehoviak had repudiated the contract by an attempted assignment.

On April 18, 2006, Deutsche Bank notified Pehoviak's attorney that Pehoviak was in default on the sale. Deutsche Bank then purchased the property for $528,215.80. Consequently, there was no payment of Commerce's subordinate mortgage.

Prior to this notification, on April 10, 2006, Pehoviak filed the instant action against Deutsche Bank and the mortgagors seeking damages and specific performance.[10] The complaint alleged that "the transfer of the premises was to occur on April

[8]As previously indicated, the memorandum of terms and conditions of sale sets forth an alternative closing date of thirty days after the auction — here April 5 — in the event that the purchase is financed.

[9]The trial judge found that under the circumstances present here, "Deutsche Bank's position that Pehoviak defaulted by not paying the purchase price within fifteen (15) days of the foreclosure sale was also unreasonable."

[10]The mortgagors are not parties to this appeal.

5, 2006." On May 26, 2006, Commerce learned of the suit and moved to intervene as a plaintiff, alleging negligence on the part of Deutsche Bank. The motion to intervene was allowed. A Superior Court judge initially granted summary judgment for Deutsche Bank, and thereafter, Deutsche Bank and Pehoviak settled. Commerce pursued an appeal, and this court, in an unpublished memorandum and order pursuant to Appeals Court rule 1:28, reversed the grant of summary judgment. *Pehoviak* v. *Deutsche Bank Natl. Trust Co.*, 79 Mass. App. Ct. 1101 (2011). In reversing the grant of summary judgment, this court held that "[t]he exercise of the power of sale by the foreclosing mortgagee and the attendant obligation to act in good faith and with reasonable diligence necessarily includes those actions necessary to complete and close the sale." *Id.* We concluded, therefore, that the issues "[w]hether Deutsche Bank's actions were reasonable and the exercise of a sound discretion, and whether they caused a sale that would otherwise have been completed to fall through," were jury questions. *Id.* (citation omitted).

After the jury-waived trial that followed, the judge found that Deutsche Bank "did not act in good faith and did not use reasonable diligence in exercising the statutory power of sale, and that Commerce Bank was harmed by Deutsche Bank's breach of its duty."

2. *Discussion.* Deutsche Bank's argument that it did not breach its duty to act with good faith and reasonable diligence because it gave timely and proper notice to subsequent junior lienholders in compliance with G. L. c. 244, § 14, is unfounded. "[I]n exercising a power of sale, a mortgagee is bound to exercise both good faith and reasonable diligence, and cannot shelter himself behind a mere literal compliance with the terms of the power." *Cambridge Sav. Bank* v. *Cronin*, 289 Mass. 379, 382 (1935). Therefore, compliance with G. L. c. 244, § 14, and the duty to act with good faith and reasonable diligence are two distinct issues. See *Atlas Mort. Co.* v. *Tebaldi*, 304 Mass. 554, 557 (1939) ("In executing the power of sale, the plaintiff, in addition to a literal compliance with the terms of the power, was bound to exercise good faith and to put forth reasonable diligence to protect the interests of the mortgagor"). Whether Pehoviak was excused from the contract by Deutsche Bank's

failure to provide him with the notices to junior lienholders is an issue not before this court as it concerns Pehoviak's breach of contract claim.[11]

Even if we accept Deutsche Bank's argument that G. L. c. 244, § 14, did not impose a duty to provide Pehoviak with the statutory notices to junior lienholders, Deutsche Bank breached its duty to act in good faith by failing to provide Pehoviak with the notices. "It has become settled by repeated and unvarying decisions that a mortgagee in executing a power of sale contained in a mortgage is bound to exercise good faith and put forth reasonable diligence. Failure in these particulars will invalidate the sale even though there be literal compliance with the terms of the power." *Sandler* v. *Silk*, 292 Mass. 493, 496 (1935). "This duty and obligation is available for the protection not only of the mortgagor but of those claiming in his right, including those holding junior encumbrances or liens." *Sher* v. *South Shore Natl. Bank*, 360 Mass. 400, 401 (1971). "The mortgagee's duty is more exacting when it becomes the buyer of the property. When a party who is intrusted with a power to sell attempts also to become the purchaser, he will be held to the strictest good faith and the utmost diligence for the protection of the rights of his principal. Consistent with these requirements, the mortgagee has a duty to obtain for the property as large a price as possible." *Williams* v. *Resolution GGF OY*, 417 Mass. 377, 383 (1994) (citations and quotations omitted). Nonetheless, "mere inadequacy of price alone does not necessarily show bad faith or lack of due diligence." *Sher* v. *South Shore Natl. Bank*, *supra* at 402.

Under G. L. c. 244, § 14, Deutsche Bank was obligated to give timely and proper notice to the IRS and to Armstrong of the pending foreclosure sale if the foreclosure was to be effective. See G. L. c. 244, § 14. So long as timely and proper notice under G. L. c. 244, § 14, is given to junior lienholders, these subsequent liens are extinguished with the foreclosure of a senior mortgage lien; however, the junior lienholders' debts are

---

[11]We have already determined that since Pehoviak settled with Deutsche Bank, Commerce cannot pursue Pehoviak's breach of contract claim in his stead. See *Pehoviak* v. *Deutsche Bank Natl. Trust Co.*, 79 Mass. App. Ct. 1101 (2011).

not discharged. See G. L. c. 244, § 14. See also *Purdie* v. *Roche*, 304 Mass. 647, 650 (1939) ("[T]he foreclosure of the first mortgage extinguished the lien of the second mortgage but not the debt . . .").

Moreover, to extinguish the junior IRS lien, Deutsche Bank had to comply with the further requirements of the Internal Revenue Code, Title 26 U.S.C. § 7425 (2006).[12] If a mortgagee fails to comply with these notice provisions, the mortgagee's lien is extinguished, the Federal lien is "elevated from [its] junior status," and the IRS's right to redeem survives. *Southern Bank of Cauderale County* v. *Internal Rev. Serv.*, 770 F.2d 1001, 1009 (11th Cir. 1985). See *Aquilino* v. *United States*, 363 U.S. 509, 513-514 (1960) ("[O]nce the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property' ").

Therefore, as the trial judge found, "Pehoviak's demands for evidence of notice given to the lienholders was a proper inquiry. It did not constitute a repudiation of the deal. Deutsche Bank's response that it did was unwarranted and unreasonable." While we can understand Deutsche Bank's skepticism about Pehoviak's bona fides, its claim that it did not have to provide the notices because it believed Pehoviak was not a serious buyer is particularly unreasonable in light of Pehoviak's repeated statements of his intent to complete the sale, and it appears there would have been little or no harm to Deutsche Bank to reveal the evidence that it complied with the notice requirement, especially considering the concurrent responsibilities owed by Deutsche Bank to the interests of others, such as Commerce.

Given the liens of record and the fact that Pehoviak had no other avenue to ascertain if Deutsche Bank had given proper notice to the IRS and Armstrong, it was reasonable, and indeed necessary due diligence in representing a buyer of property that had been foreclosed, for Pehoviak's attorney to request evidence of compliance with this aspect of the statute. Accordingly,

---

[12]Under § 7425(c)(1) notice must be given at least twenty-five days in advance of the sale. If proper notice is given, the IRS is limited to a 120-day right of redemption. 26 U.S.C. § 7425(b), (d).

it was within Deutsche Bank's duties of good faith and reasonable diligence to respond to Pehoviak's inquiries to facilitate the sale. From the time of Pehoviak's first inquiry, Deutsche Bank had the documentation he requested. We fail to perceive a reason, consistent with its duties, for Deutsche Bank's repeated refusal to provide such documentation; consequently, we conclude that the judge properly determined that this refusal was a breach of Deutsche Bank's duty to exercise good faith and to use reasonable diligence to protect the rights and interests of the mortgagor and Commerce Bank. See *Milton Sav. Bank* v. *United States*, 345 Mass. 302, 307 (1963).

Next, Deutsche Bank argues that Commerce failed to offer any evidence of causation in the form of proof that Pehoviak was ready and able to tender the required purchase price. "Ordinarily causation is a question of fact, though it may become a question of law when all the facts are established and there can be no reasonable difference of opinion as to the effect of them." *McKenna* v. *Andreassi*, 292 Mass. 213, 217 (1935). See *Stamas* v. *Fanning*, 345 Mass. 73, 76 (1962).

In reviewing a jury-waived trial, "the findings of fact of the judge are accepted unless they are clearly erroneous. We review the judge's legal conclusions de novo." *T.W. Nickerson, Inc.* v. *Fleet Natl. Bank*, 456 Mass. 562, 569 (2010). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Springgate* v. *School Comm. of Mattapoisett*, 11 Mass. App. Ct. 304, 309 (1981), quoting from *United States* v. *United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

Here, the judge found that Pehoviak's testimony that he had relied on Belekewicz to finance prior transactions, the correspondence from Pehoviak's counsel affirming Pehoviak's intent to go forward with the sale, and the fact that Pehoviak's complaint sought specific performance made it "more likely than not that Pehoviak had available to him the means to go forward." Although there is evidence to support Deutsche Bank's argument, namely that Pehoviak never received a commitment letter from a lender and, at trial, Pehoviak did not introduce evidence of a bank statement that showed he had the funds at

hand to complete the sale, there is also evidence to support the judge's findings. Not only had Pehoviak used Belekewicz to finance previous transactions, but he was initially represented by Belekewicz's lawyer, Attorney Brecher, further supporting the judge's finding that Pehoviak had the means to go forward with the sale. "[I]f the [trial] court's account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Edinburg* v. *Edinburg*, 22 Mass. App. Ct. 199, 203 (1986), quoting from *Anderson* v. *Bessemer City*, 470 U.S. 564 (1985). Because the judge could permissibly choose between two views of the evidence, his ultimate findings on causation were not "plainly wrong." We discern no error. See *Gaw* v. *Sappett*, 62 Mass. App. Ct. 405, 409 (2004).

Finally, Deutsche Bank argues that Commerce's recovery must be reduced because Commerce failed to mitigate its damages by making a bid or registering a contingent bid at the foreclosure sale. However, mitigation is an affirmative defense, and "[a]ffirmative defenses are waived when they are not raised in the first responsive pleading." *Aronovitz* v. *Fafard*, 78 Mass. App. Ct. 1, 8 (2010). Therefore, since Deutsche Bank did not raise mitigation of damages as an affirmative defense in its answer, this claim is not properly before us. *Cummings Properties, LLC* v. *National Communications Corp.*, 449 Mass. 490, 497 (2007) (issue not preserved for appellate review where party failed to plead mitigation as affirmative defense). See Mass.R.Civ.P. 8(c), 365 Mass. 749 (1974). Moreover, Deutsche Bank's attempt to amend its answer to plead mitigation of damages as a defense in an oral posttrial motion was untimely, the judge properly denied it,[13] and the defense is accordingly waived. See *Aronovitz* v. *Fafard, supra.*

Finally, even if we were to consider Deutsche Bank's mitiga-

---

[13]At the close of trial, Deutsche Bank made an oral motion to amend its answer, Commerce objected, and the judge took the motion under advisement. Although the judge did not explicitly rule on the motion prior to or in his decision, Deutsche Bank's motion to amend was implicitly denied.

tion argument, it does not appear that Commerce's inaction at the auction was commercially unreasonable. Compare *Burnham v. Mark IV Homes, Inc.*, 387 Mass. 575, 586 (1982) ("The general rule with respect to mitigation of damages is that a plaintiff may not recover for damages that were avoidable by the use of reasonable precautions on his part"). It was reasonable for Commerce to assume that Deutsche Bank would act in good faith and with reasonable diligence in bringing this foreclosure sale to a successful close because the failure of Deutsche Bank to comply with these duties as the foreclosing mortgagee would result in the invalidation of Deutsche Bank's foreclosure sale. See *Krassin v. Moskowitz*, 275 Mass. 80, 82 (1931) ("It has become elementary by repeated decisions that a mortgagee attempting to execute a power of sale contained in a mortgage must exercise good faith and use reasonable diligence to protect the interests of the mortgagor or of the one holding the title to the equity of redemption. Failure in this respect will invalidate the sale notwithstanding a bare literal compliance with the terms of the power"). See also *Sandler v. Silk*, 292 Mass. at 496.

*Judgment affirmed.*