NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1518                                    Appeals Court


 PROPERTY ACQUISITION GROUP, LLC  vs.  KENNETH IVESTER, THIRD, &
                another[1] (and a companion case[2]).


                       No. 17-P-1518.

        Essex.     September 11, 2018. - April 18, 2019.

             Present:  Vuono, Agnes, & Henry, JJ.



Mortgage, Foreclosure.  Real Property, Mortgage, Bona fide
     purchaser.  Appraisal.  Damages.  Bona Fide Purchaser.
     Summary Process.  Practice, Civil, Summary judgment,
     Summary process.




     Civil action commenced in the Superior Court Department on
January 19, 2016.

     The case was heard by James F. Lang, J., on motions for
summary judgment.

     Summary process.  Complaint filed in the Peabody Division
of the District Court Department on March 7, 2016.

     After transfer to the Northeast Division of the Housing
Court Department, the case was heard by Timothy F. Sullivan, J.,
on a motion for summary judgment.


_____

     [1] Susan Ivester.

     [2] Kenneth R. Ivester, Third, & another  vs.  Federal
National Mortgage Association & another.

Kristin L. Thurbide (Josef C. Culik also present) for
Kenneth Ivester, III, & another.
Brady Hermann for Federal National Mortgage Association.
Edward J. Fallman for Property Acquisition Group, LLC.

HENRY, J. The primary issue in this case is whether the
mortgagee, Federal National Mortgage Association (Fannie Mae),
exercised good faith and reasonable diligence to protect the
interests of the mortgagors, Kenneth Ivester and Susan Ivester
(Ivesters), by obtaining the highest possible price at an
auction sale. We hold that on this summary judgment record,
which contains evidence of an inadequate price as well as
evidence that Fannie Mae (1) failed to take any steps to
determine the current fair market value of the property before
the auction sale and (2) did not take any steps other than
compliance with statutory mandates, the mortgagors raised
material disputes of fact as to whether the mortgagee complied
with its duty to exercise good faith and reasonable diligence.

1. Background. These consolidated cases arise from the
foreclosure of the Ivesters' property. The winning bidder at
that foreclosure auction was Property Acquisition Group, LLC
(PAG). The Ivesters appeal from a Superior Court judgment
dismissing their claim that the mortgagee, Fannie Mae, did not
exercise good faith and reasonable diligence in conducting the
foreclosure sale. That appeal has been consolidated with the

Ivesters' appeal from the amended judgment entered against them on PAG's summary process action in the Housing Court. Both cases were resolved against the Ivesters on summary judgment. We summarize the undisputed facts drawn from the summary judgment record; to the extent the record includes disputed evidence, we consider that evidence in the light most favorable to the Ivesters, against whom summary judgment entered. See Ritter v. Massachusetts Cas. Ins. Co., 439 Mass. 214, 215 (2003).

a. Purchase, mortgage, and foreclosure. The Ivesters purchased the property located at 245 Salem Street, Lynnfield (property) for $399,000 in October, 2003. They refinanced in 2006 with a $302,000 loan from CitiMortgage, Inc., secured by a mortgage on the property, and a second loan for $50,000 from Citibank Federal Savings Bank.[3]

The Ivesters admit that they stopped making payments on their $302,000 loan in 2013 and that, as of July, 2015, were in arrears in the amount of $65,228.38. They also concede that Fannie Mae, the assignee of the mortgage, was both authorized and justified in exercising its right under the mortgage to sell the property for nonpayment and that Fannie Mae satisfied all of

---

[3] No issues pertaining to the second loan have been raised in this appeal.

the statutory requirements pertaining to foreclosure by sale contained in G. L. c. 244, §§ 11-17B.[4]

On behalf of PAG, Richard Damiano attended the foreclosure auction, which was conducted by Fannie Mae's agent.[5]  The opening bid price was set at $329,000.  Damiano and two other bidders entered bids.  Damiano's bid prevailed at $355,000, and the foreclosure deed was recorded on January 8, 2016.

b.  Property description.  The property consists of 4.57 acres, approximately 103,000 square feet (2.36 acres) of which is buildable.  At the time of the foreclosure auction, the property was improved with a single family home.  The Ivesters contend that facts existed that might have alerted Fannie Mae and did alert bidders to the development potential of the property.  At the time of the foreclosure, local zoning bylaws required 30,000 square feet per lot and continuous frontage of 150 feet.  Although the property had only noncontinuous frontage

---

[4] On October 14, 2015, Fannie Mae gave the required notice to the Ivesters that a foreclosure sale would be conducted by auction on November 13, 2015.  In addition, for three consecutive weeks, Fannie Mae advertised the foreclosure sale in the Lynn Daily Evening Item, a newspaper with a general circulation in Lynnfield.

[5] There is a dispute of fact as to the number of registered bidders present at the auction, fueled in part by Fannie Mae's refusal to answer an interrogatory requesting the identity of all persons who attended.  While those individuals may have discoverable information, this dispute is not material to our decision.

of 143.41 feet and 42.26 feet on Salem Street, the Ivesters contend that installation of a new road could open the property to further development, as demonstrated by conceptual plans created for PAG shortly after it acquired the property. Moreover, while the property is located in a single-family residential district, there are restaurants and businesses in the immediate neighborhood, including adjacent to the property. The property, however, does contain wetlands, and any development proposals likely would require an order of conditions from the Lynnfield conservation commission.

c. Value of the property. The parties dispute the fair market value of the property at the time of the auction. Fannie Mae admits it did not obtain any appraisals, evaluations, or expert opinions to determine the value of the property prior to the auction. Fannie Mae did not answer an interrogatory asking what amount it had authorized as the starting bid for the foreclosure auction. The record does not otherwise reflect how Fannie Mae or its auctioneer valued the property or arrived at a minimum or opening bid for the auction. Indeed, Fannie Mae answered interrogatories inquiring as to "every effort [Fannie Mae] engaged in . . . to determine the . . . fair market value" of the property prior to the foreclosure auction by stating only

that it did not obtain any appraisals.[6]  In response to an interrogatory inquiring as to each action that would demonstrate reasonable diligence to protect the interests of its mortgagors, Fannie Mae answered, in relevant part, that "after providing the required notices to Plaintiffs, a foreclosure auction was held on November 13, 2015 and the . . . [p]roperty was sold to PAG for $355,000."  There is no suggestion in the record that Fannie Mae considered the property's development potential in establishing the opening bid or in advertising the property for auction.

Fannie Mae's discovery responses do not suggest it was aware of or relied on the property's 2015 assessed value for tax purposes (assessed value).  On appeal, however, Fannie Mae relies on the property's 2015 assessed value, which was $361,900.  The Ivesters and PAG rely on appraisals valuing the property as of the date of the auction.  The Ivesters' expert appraised the property at $975,000,[7] and PAG submitted an expert

---

[6] In an interrogatory, the Ivesters asked Fannie Mae to describe generally its policies and procedures for conducting foreclosure auctions, including how Fannie Mae determines the fair market value of a property and its starting bid amount. Fannie Mae, after stating its objections, referred to Fannie Mae guidelines "available on the internet," without offering a specific website or other identifying features.

[7] In addition, the Ivesters submitted a market valuation of $900,000, dated the day they brought suit against Fannie Mae. This valuation did not indicate that it reflected the value on

appraisal valuing the property at $385,000. All of the valuations concluded that the highest and best use of the property was as vacant land, developable into two to four single family residences.

d. Litigation. The Ivesters commenced this action in Superior Court. In count I of their amended complaint, they asserted that Fannie Mae failed to act in good faith and use reasonable diligence to protect the Ivesters' interests; in count III they sought a declaration that the foreclosure sale was invalid and that they have superior title to PAG; and in count IV, they asserted that Fannie Mae violated G. L. c. 93A.[8] A Superior Court judge allowed separate motions for summary judgment brought by Fannie Mae and PAG. The judge concluded that Fannie Mae was entitled to summary judgment because the Ivesters had not put forth sufficient evidence to meet their burden of proving that Fannie Mae breached its duty to exercise good faith and reasonable diligence to protect the Ivesters' interests in the foreclosure sale of the property. The judge reasoned that, "in setting its initial foreclosure bid price,"

---

the date of the auction. It does not appear that the Superior Court judge considered this valuation.

[8] The Ivesters have not appealed from the dismissal of count II, which asserted that Fannie Mae failed to comply with the requirements of G. L. c. 244, § 15A.

Fannie Mae had no obligation "to consider anything other than the value of the property as it was presently zoned and used." The judge also concluded that PAG was entitled to summary judgment because it was a bona fide purchaser for value that had no knowledge of any potential title infirmity.

After PAG took title, it commenced a summary process action against the Ivesters in the Housing Court. That action was stayed until judgment entered in the Superior Court case. Ultimately, the Housing Court judge vacated the stay of PAG's summary process action and entered judgment for possession in favor of PAG.[9] We consolidated the appeals from both judgments.

2. Discussion. a. The Superior Court judgment. The Ivesters argue that summary judgment was erroneously granted to Fannie Mae because it failed to exercise good faith and reasonable diligence in conducting the foreclosure sale.

i. Foreclosure standards. "[T]he power of sale [in a foreclosure] is a substantial power that permits a mortgagee to foreclose without judicial oversight . . . [and] is to be

---

[9] In an amended judgment, the Housing Court also ordered the Ivesters to pay $29,750 in damages, comprised of a monthly use and occupation fee agreed to by the parties and paid by the Ivesters to their attorney in escrow while the actions were pending. With interest, fees, and costs, the Ivesters were ordered to pay $35,349. The Ivesters make no argument as to the damages award against them and have waived any argument as to that award.

exercised with careful regard to the interests of the mortgagor" (quotations and citations omitted). Federal Nat'l Mtge. Ass'n v. Marroquin, 477 Mass. 82, 86 (2017). "It has become elementary by repeated decisions that a mortgagee attempting to execute a power of sale contained in a mortgage must exercise good faith and use reasonable diligence to protect the interests of the mortgagor or of the one holding the title to the equity of redemption." Krassin v. Moskowitz, 275 Mass. 80, 82 (1931). See Pehoviak v. Deutsche Bank Nat'l Trust Co., 85 Mass. App. Ct. 56, 61-62 (2014). The duty to exercise good faith and reasonable diligence is not met by "a mere literal compliance with the terms of the power [of sale]" or with the requirements of G. L. c. 244, § 14. Pehoviak, supra at 61, quoting Cambridge Sav. Bank v. Cronin, 289 Mass. 379, 382 (1935). "Therefore, compliance with G. L. c. 244, § 14, and the duty to act with good faith and reasonable diligence are two distinct issues." Pehoviak, supra.

The mortgagee must "get for the property as much as it can reasonably be made to bring . . . [and] do what a reasonable [person] would be expected to do to accomplish that result." Clark v. Simmons, 150 Mass. 357, 360 (1890). See Williams v.

Resolution GGF Oy, 417 Mass. 377, 383 (1994).[10]  It is equally well settled, however, that mere inadequacy of a foreclosure sale price, alone, does not necessarily prove an absence of good faith or reasonable diligence.  See Sher v. South Shore Nat'l Bank, 360 Mass. 400, 402 (1971).  See also Seppala & Aho Constr. Co. v. Petersen, 373 Mass. 316, 328 (1977).  There are any number of reasons that a foreclosure sale might bring a price below the fair market value.  "[I]nadequacy of price," however, may "be considered in connection with other evidence to support a finding of fraud," or, in this case, lack of reasonable diligence (citations omitted).  Id.  See Union Mkt. Nat'l Bank v. Derderian, 318 Mass. 578, 582 (1945).

ii.  Good faith and reasonable diligence.  At trial, the Ivesters would have the burden to prove that Fannie Mae failed to exercise good faith and reasonable diligence to protect the interests of the mortgagors.  See West Roxbury Coop. Bank v. Bowser, 324 Mass. 489, 492 (1949).  Accordingly, for Fannie Mae to successfully move for summary judgment, it could meet its burden by either affirmatively negating an essential element of the Ivesters' claim or by showing that they had no reasonable expectation of proving an essential element of their case at

---

[10] For example, if a reasonable person would adjourn a sale because of an absence of bidders or other reasons, a mortgagee must do so.  Clark, 150 Mass. at 360.

trial.  See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).

In an effort to meet their burden, the Ivesters sought discovery to determine what steps Fannie Mae took to protect the Ivesters' interests in the foreclosure sale.  Aside from compliance with the statutory mandates, which our cases have established is insufficient to satisfy a mortgagee's duty of good faith and reasonable diligence, see Pehoviak, 85 Mass. App. Ct. at 61-62, discovery revealed that, strikingly, Fannie Mae did nothing.

Where Massachusetts statutory and case law allows foreclosure sales without judicial oversight, see Marroquin, 477 Mass. at 86, citing Pinti v. Emigrant Mtge. Co., 472 Mass. 226, 232-233 (2015); G. L. c. 183, § 21; G. L. c. 244, §§ 1, 14, it is imperative that the foreclosing mortgagee know or ensure that efforts are taken to ascertain the value of the property prior to sale in order to protect the interests of the mortgagor. Compare Price v. Bassett, 168 Mass. 598, 600-601 (1897) (sale by life tenant).  Awareness of the fair market value of the property factors into decisions such as establishing an opening bid or even whether to postpone an auction to protect the interests of the mortgagor.  Indeed, the Supreme Judicial Court as long ago as 1897 held that a party owing a duty of good faith and reasonable diligence to another in the sale of property

violates that duty by selling the property at an inadequate price without having made any effort to determine "whether the price for which she sold was reasonable, or was the fair market value, or whether she could get more."  Id. at 601.[11]  See Edry v. Rhode Island Hosp. Trust Nat'l Bank, 201 B.R. 604, 607-608 (D. Mass. 1996) (Bankruptcy Court judge concluded that bank did not make good faith, diligent effort to protect interests of debtor where foreclosure sale price was forty-five percent of fair market value and bank made no effort to ascertain fair market value of property or enhance bidding and chose to give only "bare notice required by statute" despite common practice to use larger, more detailed "display ads" in real estate section).  See also Strayton v. Champion Mtge., 360 B.R. 8, 10-11 (D. Mass. 2007) (where mortgagee failed to conduct marketing, obtain current appraisal, contact a real estate broker for valuation or market information, or seek permission for property inspection by interested parties, Bankruptcy Court judge rejected what he characterized as "somewhat lordly 'custom and practice' defense" [citation omitted]).  Here, by its own

---

[11] Price involved the rights of a remainderman where a party with a life estate (Price) had permission to sell the property for her own maintenance and support.  The duty Price owed the remainderman is the same that a mortgagee owes a mortgagor:  a duty of good faith and reasonable diligence.  See Price, 168 Mass. at 600-601.

admission, Fannie Mae took no steps to determine the fair market value of the property before the auction. No diligence is not reasonable diligence.

Fannie Mae insists that a mortgagee has no duty to obtain an expert appraisal for every foreclosure sale. It may well be that a mortgagee may determine the fair market value of a property by using reasonably reliable sources other than a formal real estate appraisal. We hold only that prior to conducting a foreclosure sale, the mortgagee must in some way ascertain the fair market value of the property in order to satisfy its duty of good faith and reasonable diligence in selling the property.

While Fannie Mae does not contend it either was aware of or relied on the assessed value of the property for tax purposes prior to the foreclosure auction, Fannie Mae argues nonetheless that it satisfied its duty because the auction concluded in a sale price within $6,900 of that assessed value. However, the Ivesters, by offering evidence of a substantially higher property value, have raised a material dispute of fact as to whether the assessed value accurately reflected the fair market value. See WB&T Mtge. Co. v. Board of Assessors of Boston, 451 Mass. 716, 726 (2008) (although "[t]ax assessors are obliged to . . . assess all real property at its full and fair cash value, . . . that determination is inherently inexact").

The duty of the mortgagee is to do what a reasonable person would do to achieve the highest price possible to protect the interests of the mortgagor.  When reasonable efforts to value the property reveal potential for development that could enhance the price of the property, the mortgagee should consider that potential and share it with prospective bidders.  For example, in the context of determining fair market value for purposes of ascertaining damages in eminent domain cases, it is well settled that it is proper to consider potential uses of land a reasonable buyer would find significant in deciding how much to pay for a property.  See Rodman v. Commonwealth, 86 Mass. App. Ct. 500, 506 (2014).  "Because the determination of fair market value is based on what a reasonable buyer would believe the property to be worth, the highest and best use of the property is not limited to the present use . . . but includes potential uses of land that a reasonable buyer would consider significant in deciding how much to pay."  Boston Edison Co. v. Massachusetts Water Resources Auth., 459 Mass. 724, 731 (2011).[12]

---

[12] We acknowledge that "undeveloped properties are [not to be] valued as if the reasonably likely future uses already exist.  Nor is the fact that potential uses may be considered a license to speculate as to improbable future uses.  Potential uses must be 'reasonably likely' to be considered and 'discounts for the likelihood of their being realized and for their futurity' are applied" (citation omitted).  Rodman, 86 Mass. App. Ct. at 505.

While the experts in this case disagreed as to whether the property is dividable into two, three, or more lots, they all agreed that the highest and best use of the foreclosed property is as vacant land to be developed.

Finally, while it is true that in Pemstein v. Stimpson, 36 Mass. App. Ct. 283, 287 (1994), this court held that the mortgagee's fiduciary duty to the mortgagor is not violated unless the failure of diligence is "of an active and conspicuous character," we have no difficulty concluding that the Ivesters have demonstrated that there is a material dispute of fact as to whether that criterion was satisfied here. In this case, viewing the evidence in the light most favorable to the Ivesters, where evidence of a marked disparity between the fair market value and the price obtained at the foreclosure sale is combined with Fannie Mae's own admission that it (1) made no effort to ascertain the fair market value of the property prior to the foreclosure auction, (2) did not consider the development potential of the property or share that potential with potential bidders or in advertising, and (3) took no action that went beyond mere compliance with the statutory mandates, we conclude that the Ivesters have presented sufficient evidence to defeat Fannie Mae's motion for summary judgment on the Ivesters' claim

that Fannie Mae failed to exercise good faith and reasonable diligence.[13]

iii. Damages. Although the Ivesters' complaint sought a declaration that the foreclosure sale is void (see part iv, infra), it also contained a claim for money damages. It will be for the trier of fact to determine whether the Ivesters were damaged by any breach of duty by Fannie Mae. As noted above, the Ivesters have raised a dispute of material fact as to the value of the property at the time of the foreclosure sale and whether they suffered damages from any lack of good faith and reasonable diligence in Fannie Mae's exercise of the power of sale.[14] If the Ivesters prove at trial that Fannie Mae breached its duty to exercise good faith and reasonable diligence, the

---

[13] During oral argument, counsel for Fannie Mae suggested that Fannie Mae relied on the auctioneer to set the opening bid, but that assertion is not supported by the summary judgment record. Moreover, the summary judgment record does not reveal how the auctioneer set the opening bid. In any event, that Fannie Mae relied on an agent does not absolve Fannie Mae from liability. See Merrimack College v. KPMG LLP, 480 Mass. 614, 619-621 (2018) (principal vicariously liable for agent's negligence). We do not hold that the opening bid must equal the mortgagee's views regarding the actual value of the property.

[14] While Fannie Mae points to flaws in the Ivesters' experts' analyses, it did not move to strike the appraisals. In the absence of a motion to strike, there was no error in the judge's discretionary decision not to excise the appraisal valuing the property at $975,000 at the time of foreclosure. See Baptiste v. Sheriff of Bristol County, 35 Mass. App. Ct. 119, 126 (1993).

correct measure of damages will not be the difference between the fair market value and the price obtained at auction; that measure fails to account for the fact that the sale was conducted in the context of a foreclosure. Instead, the measure of damages must discount the fair market value to account for the fact that the sale was a foreclosure sale. See Seppala & Aho Constr. Co., 373 Mass. at 328, quoting Austin v. Hatch, 159 Mass. 198, 199 (1893) ("It is a notorious fact that, when land is sold by auction under a power contained in a mortgage, it seldom, if ever, brings a price which reaches its real value"). The correct measure of damages, therefore, will be the difference between what the property would have brought at auction had the mortgagee met its duty of good faith and reasonable diligence and what the property brought at the auction Fannie Mae held.

iv. Bona fide purchaser/superior title. We agree with the Superior Court judge that the summary judgment record does not support the Ivesters' claim that they have superior title to PAG because PAG is not a bona fide purchaser for value. This action was commenced after the sale to PAG had been completed and the foreclosure deed had been recorded. The Ivesters have not come forward with any evidence that PAG knew or should have known of Fannie Mae's alleged failure to exercise good faith and reasonable diligence. The Ivesters' suggestion that PAG was

sophisticated enough to know that the fair market value of the property was substantially higher than the foreclosure price does not mean PAG was aware or should have been aware that Fannie Mae had failed to exercise good faith and reasonable diligence in conducting the foreclosure sale.[15]  Our cases are replete with instances in which foreclosure sales substantially below fair market value have been upheld.  See Pehoviak, 85 Mass. App. Ct. at 62, quoting Sher, 360 Mass. at 402 ("mere inadequacy of price alone does not necessarily show bad faith or lack of due diligence").  PAG had no duty to the Ivesters to pay a higher price for the property even if it suspected the price it paid was below market value.

Moreover, even if Fannie Mae failed to exercise good faith and reasonable diligence, its lapses did not affect its right to foreclose or impair the Ivesters' knowledge of the foreclosure sale or their right to redeem or otherwise participate in the foreclosure sale.  "[I]f everything is done upon which

---

[15] While Edry and Strayton support the Ivesters' theory that Fannie Mae failed to exercise good faith and reasonable diligence, as to the rights of PAG, those cases are distinguishable because the foreclosure sales were never completed and the rights of a bona fide purchaser were not at issue.  In Edry, the highest bidder was not a purchaser because he had not completed the sale and he was a sophisticated party who knew of the mortagee's departure from custom.  Edry, 201 B.R. at 608.  In Strayton, a preliminary injunction prevented the mortgagee from completing its previously commenced foreclosure sale.  Strayton, 360 B.R. at 10.

jurisdiction and authority to make a sale depend, irregularities in the manner of doing it . . . which may affect injuriously the rights of the mortgagor, do not necessarily render the sale a nullity" (citation omitted).  Pinti, 472 Mass. at 241.  Here, the foreclosure sale is voidable, not void, and PAG's title cannot be disturbed.  See Bevilacqua v. Rodriguez, 460 Mass. 762, 778 (2011).  Accordingly, the Superior Court judge correctly granted summary judgment to PAG on count III of the amended complaint, which asserted the Ivesters' claim of superior title.[16]

b.  The Housing Court judgment.  The only argument the Ivesters make regarding the Housing Court action is that the judge erred in vacating a stay of the summary process action upon entry of judgment against the Ivesters in Superior Court.

"An appellant seeking a stay pending appeal must ordinarily meet four tests:  (1) the likelihood of appellant's success on the merits; (2) the likelihood of irreparable harm to appellant if the court denies the stay; (3) the absence of substantial harm to other parties if the stay issues; and (4) the absence of

_____

[16] Although we affirm the court's disposition on count III of the amended complaint (for declaratory judgment), on remand the judgment must be amended to declare the rights of the parties.  See McDermott v. Watertown Hous. Auth., 25 Mass. App. Ct. 995, 996 (1988), citing Boston v. Massachusetts Bay Transp. Auth., 373 Mass. 819, 829 (1977).

harm to the public interest from granting the stay" (citation omitted). C.E. v. J.E., 472 Mass. 1016, 1017 (2015). The Ivesters have shown no likelihood of irreparable harm because even if they are successful in their Superior Court action, they cannot regain title to or possession of their property. Should judgment enter in favor of the Ivesters in the Superior Court, they can be made whole by money damages. We therefore discern no error in the Housing Court judge's decision to vacate the stay of the summary process action.

3. Conclusion. The amended judgment of the Housing Court is affirmed. So much of the Superior Court judgment as entered judgment in Fannie Mae's favor on counts I and IV of the amended complaint is vacated.[17] In all other respects, the judgment is affirmed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

[17] The Superior Court judge granted summary judgment on count IV of the amended complaint, the c. 93A claim, on the basis that it was "anchored to [count I, Fannie Mae]'s alleged breach of the duty of good faith and reasonable diligence." Having reinstated count I of the amended complaint, we likewise reinstate the c. 93A claim. We express no opinion on the merits of a c. 93A claim in these circumstances.